Anthony **CHARLOT**, Alan Remache and Jose Tejada, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**ECOLAB, INC.**, Defendant.

No. 12–CV–4543 (KAM)(VMS).

United States District Court, E.D. New York.

Signed March 27, 2015.

**44**

Artemio Guerra, Michael J.D. Sweeney, Getman & Sweeney, PLLC, New Paltz, NY, Justin Mitchell Swartz, Molly A. Brooks, Sally J. Abrahamson, Outten & Golden LLP, New York, NY, for Plaintiffs.

Jeffrey W. Brecher, Jackson Lewis, P.C., Justin Robert Marino, Littler Mendelson, P.C., Noel P. Tripp, Jackson Lewis LLP, Melville, NY, Shirley Lerner, Susan K. Fitzke, John H. Lassetter, Andrew J. Voss, Littler Mendelson, PC, Minneapolis, MN, Amy S. Ramsey, Angela I. Rochester, John A. Ybarra, Littler Mendelson, P.C., Chicago, IL, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

MATSUMOTO, District Judge:

The named plaintiffs Anthony Charlot, Alan Remache, and Jose Tejada (collectively, the "Named Plaintiffs" or "Plaintiffs") brought this individual, collective, and class action against Ecolab, Inc. ("defendant") for various alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law, N.Y. Lab Law §§ 650 *et seq.;* and its supporting regulations, N.Y. Comp. Codes R. & Regs. tit. 12, Pt. 142 (collectively, the "New York Wage Laws"); and the New Jersey Wage–and–Hour Laws. N.F.S.A. §§ 34:11–56a *et seq.;* its supporting regulations, N.J. Admin. Code §§ 12:56–1.1 *et seq.;* and the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11–4.1–33.6 (collectively, the "New Jersey Wage Laws").

The Plaintiffs moved for leave to amend their complaint to add additional named plaintiffs and their respective individual and representative state law claims and to have those new individual and representative state law claims relate back to September 11, 2012, the date the original complaint was filed. (*See* ECF No. 122, Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Amend ("Pls. Mem.").) Specifically, the motion to amend concerns four proposed named plaintiffs that have opted into the FLSA collective action and their respective individual and representative state claims from four states: Illinois, North Carolina, Pennsylvania, and Washington (collectively, the "Proposed Named Plaintiffs"). (R & R at 5.) Each of these Proposed Named Plaintiffs filed a Consent to Sue form concerning their FLSA claims between April 2013 and March 2014. (*Id.*)

Defendant Ecolab consented to the addition of proposed individual and representative Pennsylvania and Washington state claims. (R & R at 6; ECF No. 124, Defendant's Opposition to Plaintiffs' Motion to Amend (Def. Opp.) at 2.) Defendant, however, opposed the Plaintiffs' motion to add the proposed Illinois and North Carolina state individual and representative class claims, on grounds of futility and prejudice.[1] Defendant contends the Illinois state claim under the IMWL are barred by the first-filed action against defendant pending in Illinois. *See Schneider v. Ecolab*, No. 14–CV–1044 (N.D.Ill. Feb. 13, 2014). (R & R at 8.)

---

1. The Plaintiffs seek to add two Illinois statutory claims—the Illinois Minimum Wage Laws ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA"). Defendant contends that claims under the IMWL are barred by the first-filed rule, because IMWL claims have been brought in an individual and collective action, *Schneider v. Ecolab*, No. 14–CV–1044 (N.D.Il. Feb. 13, 2013), and that claims under the IWPCA are futile.

(R & R at 9–14.) With respect to the North Carolina state law claims, defendant objects on the grounds that the proposed Wage–and–Hour Act overtime claims are futile as they are preempted by the FLSA and the Named Plaintiffs failed to state a separate and distinct claim under North Carolina's wage payment or "payday" statute, N.C. Gen.Stat. Ann. § 95–25.6. (R & R at 15–20.)

Moreover, defendant argued that the state claims should not relate back to the original complaint, because defendant did not have notice of the Named Plaintiffs' intent to amend its complaint to add these state claims until April 15, 2014, the date defendant received a copy of the Proposed Amended Complaint. (R & R at 2.) On July 16, 2014, Magistrate Judge Vera M. Scanlon heard oral argument on the motion to amend, (ECF No. 126, Transcript of Oral Argument ("Tr.")), after which the parties submitted supplemental letter briefs in accordance with Judge Scanlon's order. (Tr. 732:21–74:6; ECF No. 132, Named Plaintiffs' Post–Argument Letter; ECF No. 133, Defendant's Post–Argument Letter.)

By Order dated September 16, 2014, this court referred the Named Plaintiffs' motion for leave to amend to Judge Scanlon for a report and recommendation. (*See* Order Referring Motion dated 9/16/14.) After considering the parties' submissions and their arguments before the court, Judge Scanlon issued a Report and Recommendation on December 12, 2014, recommending that this court grant in part and deny in part the Named Plaintiffs' motion for leave to amend the complaint. (ECF No. 159, Report and Recommendation (the "R & R").) Specifically, Judge Scanlon recommended that this court permit the Plaintiffs to amend the complaint to add the Proposed Named Plaintiffs and their respective individual and representative state claims, but only to the extent that the statute of limitations for each claim had not expired as of April 15, 2014, the date that defendant admittedly received notice of the proposed amended complaint. (R & R at 51.) In reaching this conclusion, Judge Scanlon found that the Plaintiffs' proposed North Carolina and Illinois claims were neither futile nor prejudicial to defendant under Rule 15(a), nor were the Illinois claims barred by the first-filed rule in light of the pending action against defendant in the United States District Court in the Northern District of Illinois. (*See* R & R at 6–20.)

Although Judge Scanlon recommended that Plaintiffs' motion to amend be granted, Judge Scanlon found that the Plaintiffs did not demonstrate fair notice or mistake and, thus, recommended against granting the relation back of the state claims pursuant to Federal Rules of Civil Procedure 15(c)(1)(B), 15(c)(1)(C). Accordingly, Judge Scanlon limited her recommendation that this court permit the Plaintiffs to amend their complaint to add state law claims that were timely as of April 15, 2014. (R & R at 51.)

On January 14, 2015, the Named Plaintiffs timely filed their objections to Judge Scanlon's R & R.[2] (ECF No. 190, Named Plaintiffs' Objections to R & R ("Pls. Objs.").) On February 5, 2015, defendant Ecolab filed its response to the Named Plaintiffs' Objections to Judge Scanlon's R & R, urging this court to adopt Judge Scanlon's R & R in its entirety, but did not otherwise object.[3] (ECF No. 194, Defendant's Response to the Named Plaintiffs' Objections ("Def. Resp.").) On February 13, 2015, the Named Plaintiffs' filed a Reply to defendant's response.[4] (ECF No. 195, Named Plaintiffs' Reply to Defendant's Response ("Pls. Reply").)

---

**2.** On December 26, 2014, the Named Plaintiffs sought an extension of time to file their objections, which the court granted on December 29, 2014. (ECF No. 184, Motion for Extension of Time to File Objections; Order dated December 29, 2014.)

**3.** On January 21, 2015, defendant sought leave to file a response to the Named Plaintiffs' objections, which the court granted on the same date. (ECF No. 192, Motion for Leave to File a Response to Plaintiffs' Objections; Order dated January 21, 2015.)

**4.** On February 13, 2015, the Named Plaintiffs sought leave to file a reply to Defendant's Response to Plaintiffs' Objections, which the court granted on February 17, 2015. (ECF No. 195, Motion for Leave to File a Reply to

## I. Factual Background

The court presumes familiarity with the underlying facts of this case, which have been set forth comprehensively in Judge Scanlon's December 14, 2014 R & R, and are adopted herein. (R & R at 1–5.)

## II. Standard of Review

■■■ In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error." *Zaretsky v. Maxi–Aids, Inc.*, No. 10–CV–3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012) (internal quotation marks omitted); *see also Soley v. Wasserman*, 823 F.Supp.2d 221, 228 (S.D.N.Y.2011). Furthermore, even on *de novo* review of specific objections, the court "will not consider 'arguments, case law, and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *VOX Amplification Ltd. v. Meussdorffer*, 50 F.Supp.3d 355, 370, 2014 WL 4829578, at *11 (E.D.N.Y.2014); *Brown v. Smith*, No. 09–CV–4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012).[5]

---

Defendant's Response; Order dated February 17, 2015.)

**5.** The court recognizes that a motion to amend may be construed as a non-dispositive motion and that the R & R's recommendations as to these non-dispositive motions may be construed as dispositions of the matter under Rule 72(a), rather than recommendations. Fed.R.Civ.P. 72(a); *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir.2007) (indicating that a motion to amend the complaint is "non-dispositive" and governed by Fed.R.Civ.P. 72(a)); *Kilcullen v. New York State Dep't of Transp.*, 55 Fed.Appx. 583, 584 (2d Cir.2003) (analyzing a magistrate judge's decision to deny a Rule 15(a) motion to add a claim to the complaint under the Rule 72(a) standard); *Lumbermens Mut. Cas. Co. v. Banco Español de Credito, S.A.*, No. 03–CV–5819, 2006 WL 2987694, at *1 n. 3 (S.D.N.Y. Oct. 13, 2006) (construing Magistrate Judge's "recommendations" with regard to motion to amend as "dispositions" of the matter and reviewing under "clearly erroneous or contrary to law" standard). Pursuant to Rule 72(a), the court may review the R & R's recommendations as to the non-dispositive motions to amend, insofar as objections have been filed as to those recommendations, to determine if they are "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).

The court finds, as it has previously, that the proper classification as dispositive or non-dispositive of a motion for leave to file an amended complaint is not settled within the Second Circuit. *See Louis v. Metro. Transit Auth.*, No. 12–CV–6333, 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014) (noting that the Second Circuit has referred to a motion to amend as a non-dispositive matter, but has not explicitly decided the issue, and that district courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive); *Allen v. United Parcel Serv., Inc.*, 988 F.Supp.2d 293, 297 (E.D.N.Y.2013) (noting that authority is divided about whether a motion to amend a complaint is a dispositive or non-dispositive matter and declining to take a position where court would adopt the R & R under either standard); *Dollar Phone Corp. v. St. Paul Fire*, No. 09–CV–1640, 2011 WL 837793, at *1 (E.D.N.Y. Mar. 4, 2011) ("The proper standard of review to apply to objections to a magistrate's order denying leave to amend is not clearly settled in this Circuit."). Under both a *de novo* or clearly erroneous standard of review, this court would adopt the ruling of Judge Scanlon. Accordingly, in the discussion that follows, plaintiffs' objections are

## III. Discussion

Presently before the court is the Report and Recommendation issued by Magistrate Judge Scanlon on December 14, 2014, the Named Plaintiffs' objections and defendant's response.

Neither party objects to Judge Scanlon's recommendation that the court allow the Named Plaintiffs to amend their complaint to add the Proposed Named Plaintiffs and their individual and representative state claims pursuant to Rule 15(a)(2). Plaintiffs, however, object to Judge Scanlon's recommendation denying the relation back of claims. In particular, neither party objects to the R & R's finding that the proposed additional state claims under Illinois and North Carolina state law are not futile or prejudicial pursuant to Rule 15(a). Furthermore, the parties do not object to the finding that defendant's "invocation of the first-filed rule as a basis for denying the Named Plaintiffs' motion to amend . . . does not bar the motion to amend to add Illinois state law claims, given the status of Illinois class discovery" in *Schneider v. Ecolab,* No. 14–CV–1044 (N.D. Ill. Feb 13, 2014). (R & R at 9–12.) Nor do the parties object to the R & R's finding that defendant failed to establish futility with regard to the Illinois and North Carolina state claims, because outstanding factual and legal questions existed rendering resolution at this stage of the proceedings inappropriate. (R & R at 14, 18–19.)

Additionally, neither party objects to Judge Scanlon's finding that the Proposed Named Plaintiffs' individual FLSA and state claims are timely, with the exception of Mr. Riggs' Washington state law claims that pre-date April 15, 2011,[6] and that the

Named Plaintiffs' should be permitted to amend the complaint to include the Proposed Named Plaintiffs and their timely individual and representative state claims. The court has reviewed the aforementioned portions of Judge Scanlon's Report and Recommendation to which no objections were filed and finds no clear error.

### A. *The Named Plaintiffs' Objections*

The Named Plaintiffs' objections are limited to Judge Scanlon's recommendation that this court deny the Named Plaintiffs' request to relate back the proposed individual and representative state law claims to the date of the original complaint, September 11, 2012. Specifically, the Named Plaintiffs argue that the R & R was correct in finding that the proposed state law claims arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," but it "misapplied the law governing what establishes notice and prejudice" when finding that the new state law claims should not relate back to the filing of the original complaint on September 11, 2012. (Pls. Objs. at 5.)

The Named Plaintiffs assert that defendant had fair notice of the new state law overtime claims and is not prejudiced by the relation back of these proposed state claims to the original filing. Specifically, the Named Plaintiffs contend that the proposed additional state claims meet the basic requirements for relation back under Rule 15(c) because the original complaint gave defendant sufficient notice of the proposed state claims. (Pls. Objs. at 5.) The Named Plaintiffs further argue that the state claims are substantially the same as

---

considered timely and this court shall apply, without deciding, a *de novo* standard of review to the Plaintiffs' specific objections to Judge Scanlon's Report and Recommendation.

6. Mr. Riggs was employed from June 2010 through February 2014, and thus his claims from June 2010 through April 15, 2011 are barred pursuant to Washington state's three-year statute of limitations.

the FLSA claims pled in the original class action complaint. (*Id.* at 5–6.) Moreover, the Named Plaintiffs deny that defendant is prejudiced by relation back of the proposed state claims, not only because of the similarities between the proposed state claims and the existing FLSA claims, but also because the alleged wrongdoing pleaded in the proposed state claims arises from the same conduct as the wrongdoing alleged in the original complaint. Thus, the Named Plaintiffs assert that no additional discovery is needed and the only potential effect of relating back the proposed state claims is the expansion of damages, which is insufficient as a reason to deny relation back. (*Id.* at 10 (citing *In re Simon II Litig.*, 211 F.R.D. 86, 146 (E.D.N.Y.2002)).)

The Named Plaintiffs also argue that the R & R's conclusion that defendant did not have fair notice of the proposed state law claims was clearly erroneous and advance four specific bases for their position. (Pls. Objs. at 11.) First, the Named Plaintiffs object to the R & R's finding that defendant was not given fair notice in the original complaint that the proposed amendments would increase the numbers and identities of the potential plaintiffs. (*Id.*) Second, the Named Plaintiffs argue that the R & R erred in reaching its finding that fair notice was lacking on the basis that "the proposed amendments would also involve state law classes not contemplated by the original complaint." (*Id.* at 12.) Third, the Named Plaintiffs object to the R & R's finding that fair notice was lacking because the "state standards vary such that a defendant facing multi-state claims must analyze its records and scope of liability under each state law separately." (*Id.*) Fourth, the Named Plaintiffs argue that the R & R erroneously found that relation back of the additional state law overtime claims would include claims that have already been lost because the statute of limitations for the filing of an FLSA collective opt-in action does not toll individual claims, whereas an opt-out class action tolls all claims upon filing. (Pls. Objs. at 12.)

The Named Plaintiffs also argue that Judge Scanlon misapplied the law when she required the Named Plaintiffs to establish mistake pursuant to Rule 15(c)(1)(C). (Pls. Objs. 13–14.) The Named Plaintiffs object on the grounds that mistake under Rule 15(c)(1)(C) is not required when a party seeks to add new plaintiffs, but instead is limited to the addition of new defendants. (*Id.*) Finally, the Named Plaintiffs argue that comity concerns are not a basis to deny relation back of new claims, and that the R & R erroneously relied on comity grounds when reaching the conclusion that the proposed state claims should not relate back to the original complaint. (*Id.* at 16.)

Defendant responds to the Named Plaintiffs' objections by asserting that the Named Plaintiffs fail to identify any controlling law that compels relation back, fail to show any error in Judge Scanlon's analysis, and merely re-argue their relation back theory in their objections or posit new arguments not previously presented to Judge Scanlon. Specifically, defendant contends that Judge Scanlon properly concluded that the Named Plaintiffs failed to satisfy the notice requirement of Rule 15(c)(1)(B). (Def. Resp. at 7–9.) Moreover, defendant argues that even if the Named Plaintiffs had established fair notice, their failure to include the new plaintiffs and their state representative claims in the original complaint was not due to mistake; thus, the Named Plaintiffs failed to satisfy the mistake requirement under Rule 15(c)(1)(C). (*Id.* at 16.) Finally, defendant argues that the court should reject the Named Plaintiffs' objection with regard to comity as a "straw man" argument because the Named Plaintiffs' claim that

Judge Scanlon based her decision on comity grounds is unfounded. (*Id.* at 18.)

## B. *Analysis*

### i. *Amendment to Add the Proposed Named Plaintiffs and their Individual and State Law Claims*

■ The court adopts the R & R's findings and recommendation with respect to the Plaintiffs' motion to amend their complaint to include four additional named plaintiffs and their respective individual and representative state claims. Based upon a review of the record and Judge Scanlon's thorough and well-reasoned R & R, the court agrees, and finds independently, that Plaintiffs' motion to amend their complaint pursuant to Rule 15(a) should be granted. Moreover, the court also agrees that at this stage of the proceedings, no circumstances barring amendment, such as futility, undue delay, bad faith, dilatory motive, or undue prejudice,

exist under a liberal application of Rule 15(a). The court notes that, although amendment may not be untimely at this stage of the proceedings, any future amendment may not receive similar treatment because partial summary judgment motions are now fully briefed.

There is no objection to, and the court finds no error in, Judge Scanlon's analysis with respect to the addition of North Carolina and Illinois state claims.[7] Nonetheless, the court will address the proposed amended claims under the Illinois Wage Protection Act ("IWPCA"). The court recognizes that the IWPCA does not "mirror" the FLSA and that the Named Plaintiffs are required to establish the existence of an agreement or a contract in order to prevail under the IWPCA, a requirement that does not exist under the FLSA.[8] 820 Ill. Comp. Stat. § 115/2. As the R & R correctly noted, the IWPCA "does not establish a substantive right to payment of

---

7. The R & R does not include in its analysis the Washington and Pennsylvania claims, as the defendant consented to amending the complaint to include those state claims.

8. Although defendant did not raise jurisdictional grounds as a bar to amendment, the court notes that it is within its discretion to decline supplemental jurisdiction at a future time over the state individual and class claims, either upon disposition of the FLSA claim or upon a finding that the state claims meet any of the factors in 28 U.S.C. § 1367(c). 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction ... if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir.2013) (finding district court's decision to decline supplemental jurisdiction over New York state law claims upon dismissal of FLSA claims proper); *Anjum v. J.C. Penney Co.*, No. 13–CV–0460, 2014 WL

5090018, at *15 (E.D.N.Y. Oct. 9, 2014) (noting that "[i]n the ordinary course, once the district court has dismissed FLSA claims, the balance of factors governing the exercise of supplemental jurisdiction usually lead the district court to decline jurisdiction over pendent state law claims"); *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir.2003), *as amended* (Nov. 14, 2003) (finding that district court abused its discretion in exercising supplemental jurisdiction over state law claims because of the "inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions suggest the federal [FLSA] action is an appendage to the more comprehensive state action."); *Luciano v. Eastman Kodak Co.*, No. 05–CV–6463, 2006 WL 1455477, at *5 (W.D.N.Y. May 25, 2006) (declining to exercise supplemental jurisdiction over state law wage and contract claims, with the exception of New York, because the 36 states' wage and law claims raised complex, diverse issues of state law that would substantially predominate over the FLSA claim).

any particular regular wages or overtime wage," and "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. RoadLink Workforce Solutions, LLC*, No. 12–CV–7323, 2014 WL 3808938, at \*4 (N.D.Ill. Aug. 1, 2014).

As such, in their Motion to Amend, the Named Plaintiffs argued that Ecolab's policy manual (the "Manual") established an employment agreement, whereas Ecolab responded that the Manual's disclaimer precluded the Manual from being an agreement. (Pls. Mem. at 13; Def. Opp. at 10–11; Plaintiffs' Reply Memorandum in Support of its Motion to Amend ("Pls. Reply Mem.") at 7–8.) Specifically, the Manual, which applies to all employees of Ecolab, expressly provides that the Manual "is not intended to create an employment contract or a contract of any kind." (Declaration of Shirley Lerner in Support of Defendant's Opposition to Plaintiffs' Motion to Amend ("Lerner Decl.") Ex. B at 1.) The Manual also provides that "[defendant] reserves its right to apply and interpret these policies in its sole discretion. The Company further reserves its right, in its sole discretion, to revise, supplement, or rescind any portion of the Policy from time to time, without notice. . . ." (*Id.*) The language suggests that the Manual may not be construed as an agreement and, in any event, if it were an agreement, Plaintiffs have agreed that defendant is permitted to construe and interpret its terms in its "sole discretion."

Defendant thus argues, (*see* Def. Opp. at 11), that the Named Plaintiffs are unable to state a claim under the IWPCA, because there is no agreement as required for the IWPCA to apply, or, alternatively, if the Manual is an agreement as the Named Plaintiffs contend, the Named Plaintiffs agreed that defendant had the "sole discretion" to classify them as exempt. The Manual provides that defen-

dant may apply, interpret, revise or rescind the policy at their "sole discretion." (Lerner Decl. Ex. B at 1.) Although defendant's argument regarding the inherent paradox in the Named Plaintiffs' proposed claim under the IWPCA may have merit, the court finds that it is too early in this stage of proceedings to reach a finding of futility as to the proposed IWPCA claims.

The court notes that the Manual also indicates that Ecolab "uses a variety of agreements, including agreements with confidentiality, non-competition, non-solicitation, trade secret and patent protection provisions" which are "a material condition of an employee's employment." (*Id.*) The Manual further indicates that the "agreements must be completed and signed prior to or on the first day of employment in a position." (*Id.*) The language of the Manual suggests that at least some, if not many or all, of its employees are required to sign some type of agreement as a "material condition" of employment. Accordingly, the court agrees with Judge Scanlon's determination that dismissal of the IWPCA claims at this stage of the proceedings is premature as there are sufficient questions of material fact with regard to whether the Manual or other employment agreements exist to meet the requirements under the IWPCA.

#### ii. *Relation Back*

■ The R & R properly analyzes relation back of amendments under Rule 15(c). First, Rule 15(c) permits relation back of an amendment to the original complaint, where "the amendment asserts a claim . . . that arose out of the same conduct, transaction, or occurrence set out . . . in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). The R & R also properly analyzes relation back under Rule 15(c)(1)(C)(i) and (ii), which require that 15(c)(1)(B) is satisfied, and the amendment seeks to change a "party against whom a

claim is asserted," and "the party to be brought in by amendment" received notice and "will not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity."[9] Fed.R.Civ.P. 15(c)(1)(C); *see Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir.2013); *In re Vitamin C Antitrust Litig.*, 995 F.Supp.2d 125, 128 (E.D.N.Y.2014).

The Named Plaintiffs dedicate many pages of their objections to a re-hashing of their original arguments in support of their motion to amend and relate back their proposed new claims. (*See* Pls. Objs. 4–11.) Specifically, the Named Plaintiffs argue that defendant received sufficient notice of the proposed claims from the original complaint and defendant is not prejudiced by the relation back of the new state claims. (*Id.*) To the extent the Named Plaintiffs "simply reiterate[ ] the original arguments" previously made before Magistrate Judge Scanlon, the court has reviewed these findings for clear error and finds none. *Zaretsky*, 2012 WL 2345181, at *1.

### a. *Relation Back Under Rule 15(c)(1)(B): Fair Notice Requirement*[10]

The Named Plaintiffs argue that the R & R erroneously concluded that defendant did not receive fair notice of the proposed class claims for several reasons. In support, the Named Plaintiffs largely reiterate the arguments advanced in their original submissions and do not identify any controlling or overlooked legal authority suggesting that this court should reach any findings or conclusions contrary to the R & R.

The Named Plaintiffs also argue for the first time in their objections that the original complaint explicitly provided notice by stating in its Prayer for Relief that plaintiffs intended "to plead individual state law wage claims for individuals who have joined this action." (Pls. Objs. at 9; *see* ECF No. 1, Complaint ("Compl.") at 19.) The court notes that it is well-established in this district and circuit that a district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not. *See Pizarro v. Gomprecht*, No. 10–CV–4803, 2013 WL 990997, at *2 n. 1 (E.D.N.Y. Mar. 13, 2013), *appeal dismissed* (July 18, 2013) (quoting *Chalasani v. Daines*, No. 10–CV–1978, 2011 WL 4465408, at *1 n. 3 (E.D.N.Y. Sept. 26, 2011)) ("Generally, courts do not consider such 'new arguments' or new evidence 'raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not' and the Court declines to do so."); *Illis v. Artus*, No. 06–CV–3077, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) ("In this district and circuit, it is established law that a district judge will not consider new arguments raised in ob-

---

9. Neither party objects to the R & R with respect to its outstanding analysis of relation back doctrines pursuant to Fed.R.Civ.P. 15(c)(1)(A) under Pennsylvania, Washington, Illinois and North Carolina state laws. Accordingly, this court finds no clear error and addresses the R & R's relation back analysis under the Federal Rules.

10. Neither party objects to the R & R's application of Rule 15(c)(1)(C) to the addition of a party plaintiff, despite the clear language of the rule that applies to circumstances where the amendment "changes the party of the naming of the party *against* whom the claim is asserted." Fed.R.Civ.P. 15(c)(1)(C) The R & R's thoughtful analysis applying Rule 15(c)(1)(C) to amendments adding plaintiff's, based on the Advisory Committee notes and Second Circuit cases, is affirmed and adopted herein.

jections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

■ In any event, the court is unpersuaded that the statement in the original complaint sufficiently put defendant on notice of potential state claims by individuals who had not yet been identified or opted into the collective action at the time the complaint was filed. The language of the complaint indicates that plaintiffs "reserve the right to plead *individual* state law wage claims for individuals who *have* joined this action." (Compl. at 19 (emphasis added).) The alleged "notice" does not suggest that Plaintiffs would bring state class claims, nor did this clause in the original complaint state law class claims would be added for all future individual opt-in plaintiffs from potentially every state.

The Named Plaintiffs object to Judge Scanlon's analysis and findings that the states' more generous statutes of limitations and tolling differences between collective and class actions expand potential plaintiff class sizes. Specifically, the Named Plaintiffs' argue that the proposed state claims' statutes of limitations are "substantially the same" as the FLSA. (Pls. Objs. at 11.) This court agrees that nearly all of the proposed states' statutes of limitations of two or three years are equal to or less than the statute of limitations of two years, or three years upon on a finding of defendant's willfulness, prescribed by the FLSA, with the exception of Illinois which is ten years.[11] *See* 29 U.S.C. § 255 ("Any action . . . may be commenced after two years, . . . except that a cause of action arising out of a willful violation may be commenced within three years.") (*See also* R & R at 22 n. 17.) The R & R, however, does not purport to state otherwise, and cites to Illinois as an example of a state statute of limitations that exceeds the FLSA. (R & R at 27.) Accordingly, the Named Plaintiffs' objection to the R & R's statute of limitations analysis does not provide a basis to deviate from the R & R's conclusions with respect to notice.

The court is also unpersuaded by the Named Plaintiffs' argument that Judge Scanlon's tolling analysis, with regard to lost FLSA claims and the relation back of new state law claims, was "incorrect factually and an invalid reason to deny relation back." (Pls. Objs. at 12.) The Named Plaintiffs do not support their objections to Judge Scanlon's tolling analysis with facts or controlling legal authority. Plaintiffs instead contend that defendant was on notice of the proposed state law claims based on their complaint's class description of "all Route Managers throughout the coun-

11. The statute of limitations is ten years under the Illinois Wage Protection Collection Act and three years under the Illinois Minimum Wage Law. *See* 735 Ill. Comp. Stat. § 5/13–206 (IWPCA); 820 Ill. Comp. Stat. 105/12(a) (IWML). The statute of limitations is three years under both the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Law Act. *See* 43 Pa.Stat.Ann. § 260.9a(g) (PWCL); *Caucci v. Prison Health Servs., Inc.*, 153 F.Supp.2d 605, 610 (E.D.Pa.2001) ("Courts in this district have unanimously applied section 260.9a's three-year limitations period to claims under the PMWA"). The statute of limitations is three years under the Washington Minimum Wage Act and the Washington Industrial Welfare Act. *See Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wash.2d 824, 837, 991 P.2d 1126, 1133 (2000) ("[T]he three-year statute of limitations of RCW 4.16.080(3) applies to WMWA claims."), *opinion corrected on denial of reconsideration*, 1 P.3d 578 (2000); *Walsh v. Health Mgmt. Assocs., Inc.*, No. 11–CV–3125, 2012 WL 1424411, at *7 (E.D.Wash. Apr. 23, 2012) (noting three year statute of limitations for violation under WIWA). The statute of limitations is two years under the North Carolina Wage–and–Hour Act. *See* N.C. Gen.Stat. Ann. § 95–25.22(f) ("Actions under this section must be brought within two years.").

try for the period from September 9, 2009 through 'judgment.'" (*Id.* at 2.) The Named Plaintiffs' reliance on the parties' stipulated case management plan filed on February 21, 2013 irrelevant because the tolling provision in the plan pertained only to the FLSA collective action.[12] (ECF No. 41, Motion to Adjourn Conference and Stipulated Case Management Plan.)

In advancing their arguments with respect to statutes of limitations and tolling, the Named Plaintiffs ignore the R & R's solid analysis of relation back under Rule 15(c)(1)(B), and its emphasis, consistent with Supreme Court guidance, on a class action defendant's need for notice of the newly alleged claims, the scope of its liability, and the identity and size of the class members. *See American Pipe & Construction v. Utah,* 414 U.S. 538, 554–55, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *see also Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1132–33 (11th Cir.2004). "Indeed, the Named Plaintiffs erroneously argue that the "dramatic difference in class size between an FLSA collective action clam [*sic*] and Rule 23 class claims" is irrelevant." (Pls. Reply at 3.) This court respectfully denies the Named Plaintiffs' objection and adopts the R & R's well-reasoned analysis of fair notice, based on the rationale in *American Pipe,* which found that fair notice should alert a defendant to "not only the substantive claims being brought against [defendant], but also of the number and generic identities of the potential plaintiffs who may participate in

the judgment." *American Pipe,* 414 U.S. at 554–55, 94 S.Ct. 756 (1974); *see also Cliff,* 363 F.3d at 1132–33 (affirming district court's finding that plaintiff asserting class claims on behalf of Florida residents did not provide adequate notice to defendant of proposed claims on behalf of national class for purposes of relation back); *Senterfitt v. SunTrust Mortgage, Inc.,* 385 F.Supp.2d 1377, 1380 (S.D.Ga.2005) (finding that second amended complaint could not relate back because prior pleadings did not adequately put defendant on notice of a significantly larger class whose claims stretched twenty years into the past); *Anderson v. City of Wood Dale, IL,* No. 93–CV–425, 1995 WL 106318, at *3 (N.D.Ill. March 9, 1995) (noting that, "[w]hile . . . an increase in potential liability is not sufficient prejudice to deny the relation back of new plaintiffs, a defendant is entitled to notice of the existence and involvement of new plaintiffs"). Further, the Named Plaintiffs' ignore the R & R's recognition that plaintiffs wishing to rely on relation back must bear some responsibility to define the scope of the action they are bringing, so that defendants may properly evaluate and respond to such claims. (R & R at 27.)

Moreover, as Judge Scanlon aptly noted, the inherent differences between state class opt-out procedures and FLSA collective action opt-in procedures, exacerbated by the possibility of different and lengthier statutes of limitations, such as under Illinois law, result in a significant expansion

---

12. The Named Plaintiffs rely on the parties' stipulated case management plan filed on February 21, 2013 (ECF No. 41) and so-ordered on the same date, memorializing defendant's agreement to toll the FLSA claims for the entire class from February 21, 2013 "in return for the Named Plaintiffs' agreement to litigate defendant's affirmative defenses before seeking conditional certification and notice to the class of the opportunity to join the action." (Pls. Objs. at 13.) The Named

Plaintiffs, however, ignore the fact that the so-ordered stipulation between the parties was limited to "FLSA claims of members of the putative FLSA collective," and does not extend to potential state law class claims, and again ignores the fundamental difference between the tolling of state class and FLSA collective claims. (*See* ECF No. 41, Motion to Adjourn Conference and Stipulated Case Management Plan.)

of a plaintiff class that was not contemplated by defendant. Potential members of a class action are parties to the litigation and toll the statute of limitations upon the filing of the class action is filed, unless they later opt out, but putative class members in a FLSA collective action become members and toll the statute of limitations only after they opt-in and file a consent to sue letter. *See American Pipe*, 414 U.S. at 554–55, 94 S.Ct. 756 (finding that filing of class action claim tolls the statute of limitations for all putative members of the class); *Hosking v. New World Mortgage, Inc.*, 602 F.Supp.2d 441, 447 (E.D.N.Y. 2009) (noting that in FLSA cases, the statute of limitations begins to run until individual plaintiffs "opt-in" to the case). Thus, under the Named Plaintiffs' relation back theory, tolling differences between class actions and FLSA collective actions would effectively permit putative members of the FLSA collective to resurrect their claims as state law overtime class members, despite the expiration of the statute of limitations on their federal claims.

In practical terms, as Judge Scanlon aptly noted in her R & R, plaintiffs would be "permitted to stop the clock on all state law wage-and-hour claims possibly brought against an employer in multiple states by filing a single FLSA collective action, as long as they were later able to identify plaintiffs in other states." (R & R at 28.) This result would be inherently unfair to a defendant that has not been afforded fair notice of these potential state claims. Accordingly, the court respectfully overrules the Named Plaintiffs' objections to the R & R's analysis and recommendations with regard to statutes of limitations and tolling.

The court also finds unavailing the Named Plaintiffs' argument that defendant received fair notice under Rule 15(c)(1)(B) because the state law classes were contemplated in the original complaint. The Named Plaintiffs argue that "all the members of the new state law overtime classes are members of the original FLSA class, and they raise the same claims ... based on the same facts for the same claim period." (Pls. Objs. at 12.) The Named Plaintiffs also argue that standards in the state law claims are "substantially the same under the FLSA." (Pls. Objs. at 12.)

Judge Scanlon thoroughly and correctly addressed and rejected all of the Named Plaintiffs' arguments that the defendant had fair notice because the proposed state amendments were contemplated in the original complaint, which alleged a nationwide FLSA collective, and because the state claims largely mirror the FLSA. (R & R at 24–26, 28.) Plaintiffs' conclusory objection that defendant was on notice of the claims based on the original complaint merely rehashes the same arguments made to Judge Scanlon. Thus, these portions of Judge Scanlon's R & R may be reviewed for clear error. *Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Associates, Inc.*, No. 06–CV–105, 2013 WL 1334164, at *3 (E.D.N.Y. Mar. 29, 2013) (citing *Caldarola v. Town of Smithtown*, No. 09–CV–272, 2011 WL 1336574, at *1 (E.D.N.Y. Apr. 4, 2011)) ("[G]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (internal quotation marks omitted)); *see also Zaretsky*, 2012 WL 2345181, at *1; *Soley*, 823 F.Supp.2d at 228.

Nevertheless, even applying a *de novo* review, the court concludes for the following reasons that the original complaint failed to provide defendant with fair notice of the proposed state law amendments. In support of their arguments, the Named Plaintiffs rely on cases previously cited in their motion and cases and new cases that are non-binding and inapposite to the present case, or involve relation back of claims

in materially different contexts.[13] For example, in *Higgins v. NYP Holdings, Inc.*, the court granted relation back to an individual plaintiff seeking to add Family Medical Leave Act ("FMLA") claims for interference, retaliation, and deficient notice to his already pending action for similar violations under New York State statutes. 836 F.Supp.2d 182, 193 (S.D.N.Y.2011). In *Perkins v. S. New England Tel. Co.*, the court permitted relation back as to claims raised by newly added named plaintiffs, where the newly added plaintiffs were asserting individual FLSA claims in a pending FLSA collective action. No. 07–CV–967, 2009 WL 3754097, at *6 (D.Conn. Nov. 4, 2009).

Lastly, the Named Plaintiffs cite for the first time in their objections *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F.Supp.2d 1290, 1295 (D.Colo.2009), a case which Judge Scanlon discussed and declined to follow in her thorough analysis because it focused on a question of supplemental jurisdiction, rather than on fair notice as required in this Circuit. (R & R at 26 n. 19 (noting that neither party cited *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, analyzing the and nevertheless finding it unpersuasive).) *See also Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir.1999) ("Under Fed.R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.") (internal quotation marks and citation omitted); *In re Gilat Satellite Networks, Ltd.*, No. 02–CV–1510, 2005 WL 2277476, at *26 (E.D.N.Y. Sept. 19, 2005) (citing *In re Simon II Litig.*, 211 F.R.D. at 146) (noting that pertinent inquiry for relation back was "whether the defendants had adequate notice of the claims of the newly added plaintiffs and whether the late assertion of their claims would 'surprise and frustrate reasonable possibilities for a defense.' "). As such, the Named Plaintiffs fail to identify any legal authority indicating that a defendant has fair notice of potential out-of-state claims, when only a federal collective action involving a nationwide class has been pled.

In addition, this court recognizes, as did the R & R, that existing FLSA claims and the proffered state law claims will be determined by many of the same underlying facts regarding the alleged wage-and-hour violations by defendant, and that many of the state wage-and-hour claims bear some resemblance to the FLSA. The court, however, agrees with Judge Scanlon's observation that the state law standards "vary such that a defendant facing multi-state claims must analyze its scope of liability under each state law separately" and independently of its analysis under the FLSA. (R & R at 28.) The court further agrees with Judge Scanlon that the differences in state and federal law support a finding that defendant was not given fair notice, because "[i]t would be unfair to expect a defendant to engage in [review under every state law separately] before at least one employee from a state has stepped forward . . . and force[d] the defendant to consider its liability." (*Id.*) As Judge Scan-

---

13. The Named Plaintiffs cite a number of cases in support of their objection regarding fair notice, asserting that defendant received fair notice upon the filing of the original complaint. However, as defendant correctly observes, many of the cases were cited in the original briefing and were already distinguished or declined by Judge Scanlon. (Def. Resp. at 10.) Moreover, Plaintiffs' newly cited cases involve facts that are materially different from the circumstances presented in this case. Defendant appropriately distinguishes many of these newly cited cases in its Response at page 12, footnote 8. (*Id.* at 12 n. 8.)

lon noted, "plaintiffs wishing to rely on relation back bear some responsibility to define the scope of the action they are bringing so that defendants may properly evaluate and respond to such claims." (R & R at 27.) Because the number and identities and the various state law classes subject to different statutory requirements were not identified in the original complaint, fair notice to defendant was lacking.

Indeed, under the Named Plaintiffs' theory, a national defendant should be on notice of potential class claims in any state it operated as soon as an FLSA collective action was filed, and before any representative plaintiffs were identified and joined the action. This reasoning would defeat the purpose of Rule 15(c)'s notice requirement, if the filing of a single FLSA collective action automatically put a national defendant on notice of any and all potentially related state class claims that may arise. *See, e.g., Cliff,* 363 F.3d at 1132–33 (denying relation back where original complaint alleging Florida class claim did not put defendant on notice of proposed nationwide class); *Midland Funding LLC v. Brent,* No. 08–CV–1434, 2010 WL 703066, at *3 (N.D.Ohio Feb. 22, 2010) (denying relation back where original complaint alleging Ohio class claim did not put defendant on notice of proposed nationwide class); *Feuerstack v. Weiner,* No. 12–CV–04253, 2013 WL 3949234, at *4 (D.N.J. July 30, 2013) (denying relation back where original complaint alleging New Jersey class claim did not put defendant on notice of proposed nationwide class). Thus, the court is unpersuaded that the original complaint afforded defendant fair notice of the proposed individual and representative state law claims that the original plaintiffs did not allege, and did not have standing to bring at the time the original complaint was filed.

This court finds the Named Plaintiffs' objections with regard to fair notice unpersuasive and respectfully overrules the objections to the R & R on these grounds. Accordingly, the R & R is adopted with respect to its findings and conclusions regarding fair notice and its denial of relation back under Rule 15(c)(1)(B).

### b. *Relation Back Under Rule 15(c)(1)(C)*

■ As an initial matter, because the court adopts Judge Scanlon's R & R with respect to her findings and recommendations regarding lack of fair notice, the court's analysis may end here. Failure to satisfy the notice requirement under Rule 15(c)(1)(B) warrants denial of relation back under Rule 15(c)(1)(C) because Rule 15(c)(1)(C)(i) requires that notice be given "within the period provided by Rule(m)" or 120 days after the filing of the complaint. Fed.R.Civ.P. 15(c)(1)(C)(i). The Named Plaintiffs have failed to satisfy this requirement. Nevertheless, the court will address the Named Plaintiffs' objections to the R & R's determination that the Named Plaintiffs failed to make a showing of "mistake" as required under Rule 15(c)(1)(C).

The Named Plaintiffs contend that fair notice and lack of undue prejudice are the only requirements pursuant to Rule 15(c)(1)(C) for a proposed amendment to add new plaintiffs and relate their new claims back to the original pleading, and that Judge Scanlon erred by requiring a showing of "mistake". (Pls. Objs. at 13–15.) Judge Scanlon's well-reasoned R & R thoroughly addresses whether Rule 15(c)(1)(C) applies to amendments seeking to add plaintiffs, and recognizes that it is not well-settled within the Second Circuit whether the mistake requirement of Rule 15(c)(1)(C) applies to amendments seeking to add plaintiffs. Indeed, the R & R identifies numerous decisions by district courts in the Second Circuit that either apply or reject the mistake requirement, and ultimately concludes that Rule 15(c)(1)(C)'s

mistake requirement also applies to amendments adding plaintiffs. (R & R at 43–45 (citing cases).) Judge Scanlon's conclusion relied on Second Circuit precedent in which the mistake requirement was applied to amendments seeking to add plaintiffs. (*Id.*) The R & R further relied on the Advisory Committee's notes on Rule 15, which state that "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Fed.R.Civ.P. 15 (Advisory Committee Notes to 1966 Amendment).

Thus, this court is unpersuaded by the Named Plaintiffs objections to the R & R on the grounds that Judge Scanlon "misapplied the law" when requiring the Named Plaintiffs to meet the Rule 15(c)(1)(C)(ii)'s mistake requirement. Because there is no clear guidance in this Circuit on whether Rule 15(c)(1)(C)(ii)'s mistake requirement applies to amendments seeking to add plaintiffs, and indeed, because several district courts in this Circuit have required a showing of mistake in the context of newly added plaintiffs, (*see* R & R at 43–44), Judge Scanlon did not misapply the law. The Named Plaintiffs do not assert, much less demonstrate, that their failure to include the proposed plaintiffs in their original complaint was the result of mistake of identity. As Judge Scanlon noted, "the Named Plaintiffs could have taken steps to promptly identify the Proposed Named Plaintiffs," but waited until April 15, 2014 to notify defendant of their motion to add new plaintiffs and claims. (R & R at 47.) Accordingly, the Named Plaintiffs' objection to the R & R is overruled and this court adopts Judge Scanlon's finding that a showing of mistake concerning the proper party's identity is required under Rule 15(c)(1)(C)(ii) with respect to the addition of plaintiffs, and also adopts the recommendation that relation back be denied because the Named Plaintiffs failed to meet the mistake requirement.

### c. Comity Grounds

■ The Named Plaintiffs argue that "[a]ny potential comity concerns are not a basis to deny relation back of the new Plaintiffs' claims." (Pls. Objs. at 16; *see* R & R at 29.) Defendant correctly argues that Judge Scanlon merely recited comity concerns as additional support of her ultimate determination that relation back was not appropriate pursuant to her Rule 15(c) analysis. (Def. Resp. at 18.) Indeed, Judge Scanlon did not base her recommendations on comity grounds and found that relation back was improper on the grounds that the conditions of Rule 15(c)(1)(A)-(C) were not satisfied. Thus, the court respectfully overrules the Named Plaintiffs' objections to Judge Scanlon's reference to comity as additional support for her recommendations under her Rule 15(c) analysis.

### CONCLUSION

Upon both clear error and *de novo* review of the record and Judge Scanlon's well-reasoned and thorough Report and Recommendation, the court adopts the Report and Recommendation in all respects as the opinion of the court. Accordingly, the Named Plaintiffs' Motion to Amend is granted to the extent that the claims are timely as of April 15, 2014. The Named Plaintiffs are directed to file an Amended Complaint consistent with this Order and Judge Scanlon's R & R within fourteen (14) days of this Order.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

VERA M. SCANLON, United States Magistrate Judge:

The named Plaintiffs Anthony Charlot, Alan Remache and Jose Tejada (collective-

ly, the "Named Plaintiffs") brought this individual, collective and class action to remedy alleged violations of the overtime premium pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.;* the New York Labor Law, N.Y. Lab. Law §§ 650 et *seq.;* and its supporting regulations, N.Y. Comp.Codes R. & Regs. tit. 12, Pt. 142 (collectively, the "New York Wage Laws"); and the New Jersey Wage–and–Hour Laws, N.J.S.A. §§ 34:11–56a *et seq.;* its supporting regulations, N.J. Admin. Code §§ 12:56–1.1 *et seq.;* and the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11–4.1–33.6 (collectively, the "New Jersey Wage Laws").

The Named Plaintiffs move for leave to amend their Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 15(a) and 21, and for relation back pursuant to Rule 15(c). The Named Plaintiffs seek to add four new named plaintiffs (the "Proposed Named Plaintiffs") to assert individual and representative claims under the FLSA and the wage-and-hour laws of four additional states: the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1 *et seq.;* the Illinois Wage Payments and Collections Act, 820 Ill. Comp. Stat. § 115/1 *et seq.;* and their implementing regulations, 56 Ill. Admin. Code §§ 210.100–300.850 (collectively, the "Illinois Wage Laws"); the North Carolina Wage–and–Hour Act, N.C. Gen.Stat. § 95–25.1 *et seq.;* and its implementing regulations, 13 N.C. Admin. Code 12.0300 *et seq.* (collectively, the "North Carolina Wage Laws"); the Pennsylvania Minimum Wage Act, 43 Pa. Stat. § 333.101 *et seq.;* and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1 *et seq.* (collectively, the "Pennsylvania Wage Laws"); and the Washington Minimum Wage Act, Rev. Code Wash. §§ 49.46.005 *et seq.;* Washington Industrial Welfare Act, Rev.Code Wash. §§ 49.12.005 *et seq.;* Washington Wage Rebate Act, Rev.Code Wash. §§ 49.52.050 *et seq.;* and Washington Administrative Code §§ 296–126–092 and 296–126–050 (collectively, the "Washington Wage Laws"). The amended pleading alleges that, for statute of limitations purposes, the Proposed Named Plaintiffs' individual and representative state law claims relate back to the date of the original Complaint.

Defendant Ecolab, Inc. ("Ecolab" or "Defendant") opposes, in part, the motion to amend. Specifically, Ecolab opposes amending the Complaint to include the Illinois and North Carolina claims, and opposes the relation back of each state law claim to the filing date of the original Complaint.

The motion to amend was referred to the undersigned by the Honorable Kiyo A. Matsumoto. For the reasons stated below, this Court respectfully recommends that the Named Plaintiffs' motion be granted in part and denied in part, in that the Named Plaintiffs be permitted to amend the Complaint to add the Proposed Named Plaintiffs and their claims, but only to the extent that the statute of limitations for each claim had not expired as of April 15, 2014, the date that Ecolab admittedly received notice of the proposed amended complaint.

## I. BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for purposes of the motion to amend. *See* Compl., ECF No. 1.

### A. The Original Complaint

The Named Plaintiffs worked as Route Managers ("RMs") for Ecolab, providing maintenance, installation and repair service on commercial dishwashing equipment. Compl. ¶ 2. On September 11, 2012, the Named Plaintiffs filed their Complaint alleging that Ecolab failed to pay overtime premium pay to them and to similarly situated employees, in violation of the

FLSA, the New York Wage Laws and the New Jersey Wage Laws. *Id.* ¶¶ 4–9. In addition to bringing individual actions, the Named Plaintiffs filed their federal claims as a collective action and their state claims as class actions. *Id.*

Pursuant to a stipulated case management plan, the Parties limited their initial discovery in this matter to two of Ecolab's affirmative defenses to the FLSA claims: that the RMs were properly classified as exempt from receiving premium overtime wages because they met the outside sales exemption of 29 U.S.C. § 213(a)(1), and that the RMs were properly compensated under 29 U.S.C. § 207(i). Stip. Case Mgmt. Plan, ECF No. 41–1; Order, Feb. 21, 2013, ECF. Also pursuant to the case management plan, the Parties are in the process of briefing cross-motions for summary judgment on the two affirmative defenses. Stip. Case Mgmt. Plan; *see* Order, Oct. 23, 2014.

**B. The Motion to Amend**

On May 5, 2014, the Named Plaintiffs requested leave for a pre-motion conference before the District Judge concerning a motion to amend. Letter, ECF No. 101. The motion was referred to the undersigned, and this Court set a briefing schedule. Thereafter, the Named Plaintiffs moved for leave to amend the Complaint. Not. of Mot. to Am. Compl., ECF No. 121. In support of their motion, the Named Plaintiffs submitted a memorandum of law, Pls. Mem., ECF No. 122; the declaration of their attorney, Justin M. Swartz, Esq. ("Mr. Swartz"), with exhibits, Swartz Decl., ECF No. 123; a reply memorandum of law, Pls. Reply Mem., ECF No. 126; and Mr. Swartz's supplemental declaration, with exhibits, Swartz Reply Decl.,

1. The Named Plaintiffs' motion does not concern class certification.

2. Since the filing of the present motion, approximately two workers have withdrawn

ECF No. 127. The Named Plaintiffs submitted the Proposed Amended Complaint (hereinafter, the "Amended Complaint") as an attachment to Mr. Swartz's first declaration. *See* Am. Compl., ECF No. 123–1.[1]

Ecolab opposes the Named Plaintiffs' motion, and in support of its opposition, Ecolab filed a memorandum of law, Def. Mem., ECF No. 124, and the declaration of its attorney, Shirley Lerner, Esq. ("Ms. Lerner"), with exhibits, Lerner Decl., ECF No. 125. Ecolab contends that it received a copy of the Named Plaintiffs' proposed amended pleading on April 15, 2014, and that this was the first notice Ecolab had of Plaintiffs' intent to amend. Def. Mem. 2.

This Court heard oral argument on the motion to amend. Tr., ECF No. 126. Following oral argument, the Parties submitted supplemental letter briefs in accordance with this Court's Order. Pls. Letter, ECF No. 132; Def. Letter, ECF No. 133; Tr. 73:21–74:6.

**C. The Proposed Amended Complaint**

Between the filing of the Complaint and the filing of the present motion, seventy-six workers from twenty states have filed Consent to Sue forms alleging FLSA claims against Ecolab. Pls. Mem. 2.[2] The motion to amend concerns Proposed Named Plaintiffs from four of those states:

- Garwyn Richmond ("Mr. Richmond"), an Illinois resident who has worked for Ecolab from September 2011 through the present;

- Christopher Hendley ("Mr. Hendley"), a North Carolina resident who worked for Ecolab from November 2012 through April 2014;

their Consent to Sue forms and seventeen workers have filed Consent to Sue forms. *See* Notices, ECF Nos. 129–30, 134–35, 137, 141, 144–45, 147–51, 153, 155 & 158.

- Gregory Germuska ("Mr. Germuska"), a Pennsylvania resident who worked for Ecolab from March through October 2012; and
- Matt Riggs ("Mr. Riggs"), a Washington resident who worked for Ecolab from June 2010 through February 2014.

Am. Compl. ¶¶ 21–28.

Like the Named Plaintiffs, the Proposed Named Plaintiffs allegedly worked for Ecolab as RMs; were subject to the same corporate policies and practices; and worked overtime hours for which they did not receive any overtime premium pay because Ecolab classified them as exempt under the same blanket exemption policy. Am. Compl. ¶¶ 21–29; Pls. Mem. 8. Between April 2013 and March 2014, the Proposed Named Plaintiffs filed Consent to Sue forms concerning their FLSA claims; these forms did not mention their state law claims. *See* Consent to Sue Forms, ECF Nos. 46–2 (Mr. Germuska's form, filed April 17, 2013), 83–1 (Mr. Riggs's form, filed February 26, 2014), 91–1 (Mr. Hendley's form, filed March 20, 2014), 95–2 (Mr. Richmond's form, filed March 28, 2014).

## II. ANALYSIS

The Named Plaintiffs move to amend their Complaint pursuant to Rules 15(a) and 21, and for relation back of the Proposed Named Plaintiffs' state law claims pursuant to Rule 15(c). Pls. Mem. 5, 9. Ecolab consents to the addition of the proposed Pennsylvania and Washington state claims; however, for the reasons discussed below, Ecolab does not consent to the addition of the proposed Illinois and North Carolina state claims. Pls. Mem. 2–3; Def. Mem. 2. Ecolab also objects to the relation back of each of the proposed state law claims to the date of the original Complaint. Pls. Mem. 2–3; Def. Mem. 2. The Parties do not raise any pleading dispute concerning the Proposed Named Plaintiffs' individual or representative FLSA claims.[3]

### A. The Legal Standard For Amending A Complaint

Under Rule 15(a), when a party cannot amend its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R.Civ.P. 15(a)(2). "This permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212–13 (2d Cir.2011). In addition, Rule 21 permits the Court to "on just terms, add or drop a party." Fed.R.Civ.P. 21. "[U]nder Rule 21, courts should apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Ingenito v. Riri USA, Inc.*, No. 11 Civ. 2569(MKB), 2013 WL 752201, at *3 (E.D.N.Y. Feb. 27, 2013) (quoting *Diggs v. Marikah*, No. 11 Civ. 6382(PAE), 2013 WL 227728, at *2 (S.D.N.Y. Jan. 22, 2013)).

In determining whether to grant leave to amend, the Court must accept the moving party's non-conclusory factual pleadings and draw all reasonable inferences in that party's favor, "to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir.2012).

---

**3.** *See Perkins v. S. New England Tel. Co.*, No. 07 Civ. 967(JC), 2009 WL 3754097, at *6 (D.Conn. Nov. 4, 2009) (allowing the additional named plaintiffs' representative FLSA claims, but not their individual FLSA claims, to relate back to the date of the original pleading); *see also* Tr. 24:6–10 (Mr. Swartz stated, "We would never make the argument that filing a FLSA consent form relates back to the original filing because that's precluded by the statute.").

"[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008); *see Absolute Activist Value Master Fund Ltd. v. Ficeto,* 677 F.3d 60, 71 (2d Cir.2012) ("[A] request to replead should be denied in the event that amendment would be futile."). A motion to amend will be considered futile if the Court determines, "as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners,* 681 F.3d at 119; *see Doyle v. United Airlines, Inc.,* 914 F.Supp.2d 325, 333 (E.D.N.Y.2012) (same).

As a preliminary matter, Ecolab briefly argues that the amendments are untimely for being proposed two years after the original Complaint. Def. Mem. 1; Def. Letter 3.[4] Ecolab nonetheless consented to the Pennsylvania and Washington state law amendments. Ecolab does not explain why the timing of the proposed Illinois and North Carolina amendments is problematic, while the identical timing of the proposed Pennsylvania and Washington amendments is acceptable to Ecolab. As described above, *see* Section I.C., the Proposed Named Plaintiffs from Illinois and North Carolina filed their Consent to Sue forms in March 2014; the Named Plaintiffs notified Ecolab of their intent to amend in April 2014; and the Named Plaintiffs requested leave to amend in May 2014. This timing does not suggest undue delay, as it was reasonable for the Named Plaintiffs to consolidate their proposed state law amendments into one amended

pleading. Filing for leave to amend after identifying each state law class action claim "would simply burden the Court and the parties with redundant, virtually identical motions." *Scott v. Chipotle Mexican Grill, Inc.,* 300 F.R.D. 193, 198 (S.D.N.Y. 2014). In any event, "[m]ere delay ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (quoting *Ouedraogo v. A–1 Int'l Courier Serv., Inc.,* No. 12 Civ. 5651(AJN), 2013 WL 3466810, at *5 (S.D.N.Y. July 8, 2013)); *see Maiaro v. Alarm Specialists, Inc.,* No. 13 Civ. 8658(NSR), 2014 WL 5285695, at *3 (S.D.N.Y. Oct. 15, 2014) (same). Ecolab does not allege that the proposed amendments evidence bad faith, and the Court has found no evidence of bad faith. Therefore, this Court does not recommend that the motion be denied as untimely or for bad faith.

Ecolab's primary objection to the proposed Illinois and North Carolina amendments is that they are futile and/or prejudicial. *See* Def. Mem. 3. This Court will first consider the contested amendments under Illinois and North Carolina state law, and will then consider the relation back of each of the state law claims to the date of the original Complaint.

### B. The Proposed Illinois State Law Claims

Ecolab objects to the proposed Illinois state law claims on two grounds: first, that they are duplicative of claims filed in *Schneider v. Ecolab, Inc.,* No. 14 Civ. 1044(EEC) (N.D.Ill. Feb. 13, 2014), a case presently before the United States District Court for the Northern District of Illinois, and are therefore prejudicial, and, second, that any claims under the Illinois Wage Payment and Collection Act would be fu-

---

4. This argument relates to any delay in bringing the motion to amend; Ecolab's concerns

as to statutes of limitation are discussed *infra.*

tile because the Named Plaintiffs purportedly failed to establish the existence of a contract or agreement.

### 1. Whether The Amendments Should Be Denied In Light Of *Schneider*

 "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir.2000). Under the first-filed rule, "where there are two [or more] competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Wyler–Wittenberg v. MetLife Home Loans, Inc.*, 899 F.Supp.2d 235, 243 (E.D.N.Y.2012) (quoting *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989)); *see Castillo v. Taco Bell of Am., LLC*, 960 F.Supp.2d 401, 404 (E.D.N.Y.2013) (same).

Ecolab argues that the first-filed rule should be applied to deny Plaintiffs' motion to amend because Plaintiffs were not the first litigants to raise Illinois state law class claims concerning Ecolab's alleged failure to pay premium overtime pay to RMs. Def. Mem. 8. According to Ecolab, the first-filed case was *Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Feb. 13, 2014), filed on January 6, 2014 in the Circuit Court of Cook County, Illinois and removed by Ecolab to the United States District Court for the Northern District of Illinois on February 13, 2014. *Id.* at ECF No. 1 (Notice of Removal). The original complaint in *Schneider* raised individual and representative claims under the FLSA and the Illinois Wage Laws. *Id.* at ECF No. 1–1 (the complaint); *see id.* ¶ 3 ("Plaintiff seeks to represent both a na-

tionwide class of Route Sales Managers under the FLSA, and Illinois state law classes of Route Sales Managers under the IMWL and IWPCA."). The plaintiff in *Schneider* then filed an amended pleading in which he abandoned his FLSA claims and asserted only individual and class claims under the Illinois Wage Laws. *Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Mar. 11, 2014) (ECF No. 19). Thereafter, in *Schneider*, Ecolab filed a motion to stay the action in light of *Charlot*. *Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Mar. 26, 2014) (ECF No. 27) (motion to stay).[5]

The court in *Schneider* denied Ecolab's motion to stay that case pending the resolution of dispositive motions in *Charlot*. *Schneider v. Ecolab, Inc.*, No. 14 Civ. 1044, 2014 WL 2871502, at *1 (N.D. Ill. June 12, 2014). The court reasoned that despite similarities between *Schneider* and *Charlot*, the balance of the factors weighed against a stay because the plaintiff in *Schneider* had abandoned his FLSA claims; decisions in *Charlot* would have no binding effect on the plaintiff in *Schneider*; and a stay would disadvantage him. *Id.* The court also noted that the parties had previously agreed to focus discovery in *Schneider* on the named plaintiff's individual claims. *Id.* at *2; *see Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Oct. 28, 2014) (ECF No. 56 at 9) (Ecolab acknowledged "Ecolab's request to defer class discovery until after individual plaintiff discovery" and that "[t]he Court has agreed to defer class discovery for now."). Indeed, after the denial of the motion to stay, the parties in *Schneider* proceeded with discovery only as to the named plaintiff's individual claims, not the Illinois state law class claims. *Schneider*, No. 14 Civ. 1044(EEC)

---

5. In *Schneider*, Ecolab also filed a motion to dismiss, but that motion was withdrawn without prejudice to file a motion for partial summary judgment; a briefing schedule for the summary judgment motion was set. *Schneid-*

*er*, No. 14 Civ. 1044(EEC) (N.D.Ill. Mar. 25, 2014) (ECF No. 23) (motion to dismiss); *Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Nov. 21, 2014) (ECF No. 61).

(N.D. Ill. June 16, 2014) (ECF No. 44); *see Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Nov. 21, 2014) (ECF No. 61) (stating that fact discovery on the individual claims was closed and setting a deadline for expert discovery, without setting a, schedule for discovery on the class claims).

Ecolab contends that if the Named Plaintiffs' motion to amend is granted, Ecolab will be required to litigate the Illinois class claims in two forums, which would be costly and prejudicial. Def. Mem. 9. The Named Plaintiffs respond that Ecolab's reliance on the first-filed rule is premature, and that there is no danger of duplicated efforts because the litigation in *Schneider* is focused on that named plaintiff's individual claims. Pls. Reply Mem. 5. The Named Plaintiffs further argue that the complaint in *Schneider* is a "copy-cat lawsuit"[6] and that *Charlot* was first-filed, even if *Schneider* was the first action to raise Illinois state law claims. Pls. Mem. 11.[7]

 Ecolab's invocation of the first-filed rule as a basis for denying the Named Plaintiffs' motion to amend is not persuasive in this case given the status of Illinois class discovery in *Schneider*. The first-filed rule is a jurisprudential guide to discourage forum shopping and promote judicial economy. "[T]he 'first filed' rule is not a hard and fast rule, but rather, subject to the discretion of the district court judge." *Silverman Partners, L.P. v. First Bank*, 687 F.Supp.2d 269, 292 (E.D.N.Y.2010). Although the class claims in *Schneider* are live, they are not being actively litigated at this time. Discovery in the *Schneider* case

has been limited to the named plaintiff's individual claims. In this case, the Parties have already completed discovery concerning Ecolab's FLSA exemption defenses which is likely to be relevant to the proposed Illinois class claims, due to the similar defenses available under Illinois state law. *See, e.g.*, 820 Ill. Comp. Stat. § 105/4a(2)(F) (incorporating the FLSA's exception to overtime premium pay at 29 U.S.C. § 207(i)).

Ecolab does not explain why, in such circumstances, denying the motion to amend is the appropriate remedy. Indeed, in the case Ecolab cites supporting the analogous remedy of dismissal, Def. Mem. 9, the court dismissed the action (rather than staying or transferring it) because there had been "little progress" in discovery compared to the competing action, where "the end of discovery is near." *Castillo v. Taco Bell of Am., LLC*, 960 F.Supp.2d 401, 404 (E.D.N.Y.2013); *see Wyler–Wittenberg*, 899 F.Supp.2d at 248 (denying the requested relief of dismissing the second-filed FLSA action, as "a dismissal would not bring about an equitable result"; the court instead transferred the case to the appropriate district). The record before the Court does not suggest that discovery on the Illinois class claims in *Schneider* has progressed significantly beyond that of the discovery in this case.

Furthermore, there is no conflict between duplicative or competing lawsuits, but should such a situation arise, the Parties could then move the Illinois district court for a transfer, stay or dismissal of

---

6. The complaint in *Schneider* copies portions of the Complaint in this action word-for-word, although it was not brought by the Named Plaintiffs' attorneys.

7. The Named Plaintiffs further note, Pls. Mem. 11–12, that when Ecolab moved for a stay in *Schneider*, it was Ecolab's position that *Charlot* was the "first-filed action." *Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Mar. 26, 2014) (ECF No. 28 at 1) (Ecolab's Memorandum Of Law In Support Of Its Motion To Stay); *see id.,* at 8; *see also Schneider*, No. 14 Civ. 1044(EEC) (N.D.Ill. Oct. 28, 2014) (ECF No. 56 at 9 n. 5) (Ecolab stated that *"Charlot v. Ecolab* is a first filed case...."). Ecolab has switched its position and now argues that *Schneider* is the first-filed action.

*Schneider.* Indeed, the Named Plaintiffs speculated at oral argument that they may wish to bring such a motion in the future. Tr. 57:20–24. In any event, it "is simply a feature of our multi-district court system [that] sometimes the same defendant must litigate the same issue in multiple districts." *Schneider*, 2014 WL 2871502, at *1. This Court therefore respectfully recommends finding that, at this time, the first-filed rule does not bar the motion to amend to add Illinois state law claims.

### 2. Whether The Amendments Are Futile For Lack Of A Contract Or Agreement

■ Under the Illinois Wage Payment and Collection Act, an employer must pay each employee "at least semi-monthly . . . all wages earned during the semi-monthly pay period." 820 Ill. Comp. Stat. § 115/3. The Illinois Wage Payment and Collection Act defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. § 115/2. "The IWPCA does not establish a substantive right to payment of any particular regular or overtime wage," and "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment." *Hoffman v. RoadLink Workforce Solutions, LLC*, No. 12 Civ. 7323(GSF), 2014 WL 3808938, at *4 (N.D.Ill. Aug. 1, 2014). Moreover, such an agreement "need not be formally negotiated or written." *Id.*

To demonstrate an agreement to pay premium overtime wages, the Named Plaintiffs appended to their proposed amended pleading an excerpt from Ecolab's employment policy manual (the "Manual") which states, "[i]n accordance with the federal wage and hour law, nonexempt employees are eligible to receive overtime premium pay for time worked in excess of forty (40) hours per workweek." Am. Compl. Ex. 1 at 1. The Named Plaintiffs argue that the Manual is sufficient to establish an employment agreement. Pls. Mem. 12–13. Ecolab responds that the Manual is not an employment agreement due to its express disclaimer. Def. Mem. 1012. This disclaimer states that the Manual "is not intended to create an employment contract or a contract of any kind," and that Ecolab may interpret and revise its policies "in its sole discretion." Lerner Decl. Ex. B; Def. Mem. 11.[8]

The Parties have identified an Illinois federal district court split on the issue of whether employment handbook language can create an employment agreement within the meaning of 820 Ill. Comp. Stat. § 115/2, notwithstanding express disclaimers. *See* Def. Mem. 11–12; Pls. Reply Mem. 7–8. Some courts in Illinois have found that express disclaimers preclude an employment handbook from being considered as a contract or agreement. *See Brand v. Comcast Corp.*, No. 12 Civ. 1122(YBK), 2013 WL 1499008, at *3 (N.D.Ill. Apr. 11, 2013) (in a wage-and-hour case, listing cases holding that "express disclaimers within employee handbooks negate a finding of mutual assent, which is a prerequisite to the formation of an agreement actionable under the IWPCA"); *see also Mooney v. Wyndham Worldwide Operations, Inc.*, No. 13 Civ.

---

**8.** Although the disclaimer is not included in the two pages of the Manual appended to the amended pleading, "[i]n deciding a motion to amend, the [c]ourt may consider documents that are referenced in the complaint. . . ." *Vecchione v. Dep't of Educ. of N.Y.C.*, No. 10 Civ. 6750(GBD), 2012 WL 1075831, at *2 n. 3 (S.D.N.Y. Mar. 28, 2012) (citing to *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)). As the Complaint references the Manual, this Court may consider other portions of that document, including the disclaimer.

6592(JBG), 2014 WL 2959270, at *2 (N.D.Ill. July 1, 2014) (same). Other federal courts in Illinois considering wage-and-hour claims have found that, even with disclaimers, similar handbook provisions are sufficient to "manifest assent to compliance with the terms of the law, and are sufficient to create an agreement" for purposes of Illinois state law. *Wharton v. Comcast Corp.*, 912 F.Supp.2d 655, 660–61 (N.D.Ill.2012); *see id.* at 658–59 (discussing the district court split on this issue); *see generally Barker v. Atl. Pac. Lines*, No. 13 Civ. 1272(JHL), 2013 WL 4401382, at *9 (N.D.Ill. Aug. 14, 2013) (denying a motion to dismiss where the parties disagreed as to the terms of the employment agreement and the significance of those terms; the court noted the early stage of the litigation and "the IWPCA's broad definition of agreement").[9]

The Parties have thus identified factual and legal disputes concerning whether the Manual created an employment agreement

sufficient to meet the requirements of the Illinois Wage Payment and Collections Act. These issues would benefit from discovery on the meaning and significance of the handbook language. In any event, Ecolab has not established that this claim would be futile.[10] Furthermore, Ecolab's argument is relevant only to claims under the Illinois Wage Payment and Collections Act, not the Illinois Minimum Wage Act, which defines "wages" as "compensation due to an employee by reason of his employment." 820 Ill. Comp. Stat. § 105/3. This Court does not recommend denying the motion to amend as to either the Illinois Wage Payment and Collections Act or the Illinois Minimum Wage Act claims.

## C. The Proposed North Carolina State Law Claims

Ecolab objects to the proposed North Carolina state law claims on the grounds that the overtime claims are preempted by the FLSA and that the Named Plaintiffs have not stated a separate and distinct

---

9. *See generally Uwumarogie v. Bd. of Educ. of City of Chicago*, No. 13 Civ. 1440(HDL), 2014 WL 3889024, at *3 (N.D.Ill. Aug. 8, 2014) (handbook disclaimers "are not necessarily enforceable in Illinois"); *Haslam v. DePue Unit Sch. Dist. No. 103*, No. 05 Civ. 1037(JBM), 2006 WL 91331, at *1 (C.D.Ill. Jan. 12, 2006) ("Illinois courts have disregarded disclaimers when they are inconspicuous or contradicted by clear and mandatory directives elsewhere in the handbook.").

10. Additionally, according to Ecolab, the Named Plaintiffs cannot argue that the Manual's language concerning overtime premium pay for non-exempt employees applies to RMs, because the Named Plaintiffs allege that RMs were misclassified as exempt employees. Def. Mem. 1112; Tr. 42:18–44:16. To the contrary, the manual states that Ecolab will pay overtime premium pay "[i]n accordance with federal wage and hour law," Am. Compl. Ex. 1 at 1, and the Named Plaintiffs allege that Ecolab violated this employment agreement by misclassifying them and failing to pay premium overtime rates. At this early stage of the litigation, the Court cannot determine whether there is no viable theory under

which the manual served as an agreement governing the Named Plaintiffs' compensation, such as a theory allowing a contractual relationship to be revived *nunc pro tunc*. To the extent Defendant's argument relies on the employees' state of mind, this issue would also benefit from discovery.

Defendant's citation to *Harris v. Seyfarth Shaw LLP*, No. 09 Civ. 3795(EEB), 2010 WL 3701322, at *2–3, 2010 U.S. Dist. LEXIS 93911, at *6 (N.D.Ill. Sept. 9, 2010), is inapposite. Def. Mem. 11. In *Harris*, the court issued rulings relevant to an opt-in class settlement, including that "because [the plaintiff] was misclassified as exempt and was paid a fixed weekly amount regardless of the number of hours she actually worked, there is no reason to think that she had any agreement with [the defendant] that she would be paid at a particularly hourly rate for weeks in which she worked fewer than forty hours." *Id.* The court in *Harris* made determinations about the terms of plaintiff's employment that would be premature in this case, on a motion to amend.

claim under North Carolina's payday statute, N.C. Gen.Stat. Ann. § 95–25.6.

### 1. The North Carolina Overtime Claims

■ Concerning the proposed overtime claims, the North Carolina Wage–and–Hour Act specifies that its overtime provisions (as well as its minimum wage and recordkeeping provisions) do not apply to "[a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act." N.C. Gen.Stat. Ann. § 95–25.14(a). Ecolab argues that, since the Named Plaintiffs assert FLSA claims, the proposed amendment to add North Carolina state law claims would be contradictory, and therefore futile. Def. Mem. 3. The Named Plaintiffs argue that they should be permitted to plead the North Carolina state law claims in the alternative. Pls. Reply Mem. 9.

Per Rule 8(d), "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3); see Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically...."); St. John's Univ., N.Y. v. Bolton, 757 F.Supp.2d 144, 184 (E.D.N.Y. 2010) (plaintiffs may "allege claims in the alternative, even if the legal theories underlying those claims are technically inconsistent or contradictory"); see also, Adler

v. Pataki, 185 F.3d 35, 41 (2d Cir.1999) (The Federal Rules offer "sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party....").

Here, the Named Plaintiffs have identified several cases, see Pls. Mem. 14–15; Pls. Reply Mem. 9, in which the plaintiffs were permitted to plead North Carolina overtime claims in addition to FLSA overtime claims, notwithstanding any possible contradiction between these claims. See Scott, 300 F.R.D. at 196–97; Cancilla v. Ecolab, No. 12 Civ. 3001 (N.D.Cal. Mar. 21, 2014) (Minute Entry, ECF No. 118); Blount v. Carlson Hotels, Inc., No. 11 Civ. 452(MOC)(DSC), 2012 WL 1021735, at *5 (W.D.N.C. Mar. 1, 2012), report & recommendation adopted, No. 11 Civ. 452(MOC) (DSC) (W.D.N.C. Mar. 26, 2012).[11] The cases on which Ecolab relies, see Def. Mem. 3–4, do not suggest that pleading in the alternative is improper. Ecolab also relies on cases in which the court did not allow the plaintiff to state North Carolina claims after the defendant admitted or was found to be an enterprise engaged in commerce within the meaning of the FLSA. Def. Mem. 3–4.[12] In its Answer, Ecolab denied it was the RMs' employer and that it was engaged in commerce, as those terms are defined by the FLSA. Compare Compl. ¶¶ 23, 78 with Answer ¶¶ 23, 78,

---

**11.** In Scott and Cancilla, it is unclear whether the defendants argued that the North Carolina state law claims were preempted by the FLSA claims. However, in Blount, the Court specifically held that "while [North Carolina overtime claims] may be preempted in some cases by the FLSA, [the plaintiff] is permitted at this early stage of the proceedings to plead her [state] claims in the alternative to her FLSA claims." Blount, 2012 WL 1021735, at *5.

**12.** See Lombardozzi v. Allscripts Healthcare, LLC, No. 13 Civ. 715(BO), 2014 WL 300798, at *2 (E.D.N.C. Jan. 27, 2014) (the defendant

"admits that it is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA"); Bonham v. Wolf Creek Acad., 767 F.Supp.2d 558, 565 (W.D.N.C.2011) (same); Spencer v. Hyde Cnty., 959 F.Supp. 721, 728 (E.D.N.C.1997) (finding that the defendants "evidently concede that plaintiffs' entitlement to a minimum wage and overtime pay for on-call work time is governed by the FLSA"); Amos v. Oakdale Knitting Co., 331 N.C. 348, 354, 416 S.E.2d 166, 170 (1992) ("[B]oth parties now assert that the applicable statutory scheme may be the FLSA" and not North Carolina law.).

ECF No. 30;[13] *but see* Def. Mem. 3 (section heading titled "Ecolab Is An Enterprise Under The FLSA"). Ecolab's own seemingly contradictory positions therefore make pleading in the alternative particularly appropriate in this case, so that the Named Plaintiffs can explore Ecolab's position and supporting facts.

Ecolab also asserts that the Named Plaintiffs' North Carolina overtime claims are futile because they are subject to the same exemptions as the FLSA, and therefore cannot be used to salvage claims barred by the FLSA's exemptions. 13 N.C. Admin. Code 12.0501(c)(4); Def. Letter 1.[14] As previously discussed, the Parties are in the midst of briefing whether the "outside salesman" exception of 29 U.S.C. § 213(a)(1) applies in this case and whether the RMs were properly compensated under 29 U.S.C. § 207(i). The issue remains pending on summary judgment, and is not a basis for denying the motion to amend.

Given the early stage of the proceedings, the Court recommends permitting the Named Plaintiffs to add the proposed North Carolina overtime claims in the alternative, although the dismissal of these claims may be appropriate at a later time. Indeed, in a case the Named Plaintiffs rely on, *see* Pl. Mem. 14, a court dismissed on summary judgment North Carolina overtime claims that had been pled "as an alternative remedy," because they were "preempted by the FLSA." *Martinez–Hernandez v. Butterball, LLC,* 578 F.Supp.2d 816, 819, 822 (E.D.N.C.2008).

## 2. The North Carolina Wage Payment Claims

In addition to the North Carolina overtime claims, the Named Plaintiffs argue, in their motion papers, that they seek to add a North Carolina wage payment or "payday" claim under N.C. Gen.Stat. Ann. § 95–25.6, which requires that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." Pl. Mem. 14. Unlike North Carolina overtime claims, payday claims are not preempted by the FLSA pursuant to N.C. Gen.Stat. Ann. § 95–25.14(a)(1), which specifically limits such preemption to minimum wage, overtime and recordkeeping claims.

In this case, the Named Plaintiffs assert that "Ecolab failed to pay Hendley and the North Carolina class earned wages" and that "Ecolab also failed to pay Hendley and the North Carolina class members wages for all hours worked," Am. Compl. ¶¶ 107, 210. The Amended Complaint contains no allegations that more specifically state a payday claim. Ecolab contends that "[n]owhere in Plaintiffs' amended complaint ... do Plaintiffs allege a 'payday' claim, *i.e.,* that they are entitled to "accrued wages" or wages separate and apart from their overtime claims." Def. Mem. 4. Ecolab's concern is that the Named Plaintiffs may use the payday statute "to bring 'back-door' overtime claims against FLSA covered employers, which would otherwise be expressly disallowed by N.C. Gen.Stat. 95–25.14(a)(1)." Def. Mem. 4–5.

---

13. There is a mistake in the numbering of the Complaint. Paragraph 78 is, in the Complaint and the Answer, incorrectly numbered as paragraph 13 under the First Cause of Action.

14. The North Carolina statute specifies, as an example of an FLSA exemption that applies to the state law, "[c]ommissioned inside salespersons in retail as specified in 29 U.S.C. 207(i)." 13 N.C. Admin. Code 12.0501(c)(4). Although the North Carolina provision refers to "inside salespersons," that phrase is not used in 29 U.S.C. § 207(i). The FLSA contains an "outside salesman" exemption at 29 U.S.C. § 213(a)(1). At this time, the Court need not determine whether there is any significance to the North Carolina provision's reference to "inside salespersons." *See* Pls. Letter 1; Def. Letter 2, 2 n. 1.

Although the Named Plaintiffs' payday claims could have been more clearly pled, an allegation that the RMs were not paid on their regular paydays is implicit in the Named Plaintiffs' allegations that the RMs were not paid at all. Whether the Named Plaintiffs have payday claims that are distinct from their overtime claims is both a factual and legal question inappropriate for resolution at this early stage. *See Romero v. Mountaire Farms, Inc.*, 796 F.Supp.2d 700, 710 (E.D.N.C.2011) (finding a North Carolina payday claim to be "separate and distinct" from and not preempted by the FLSA's overtime provisions, and to be "separate and distinct" where the plaintiffs alleged a failure to pay "overtime wages of one and one-half times their regular hourly rate which is a part of the employees' accrued and earned wages and should have been paid when due on the employee's regular payday"); *cf. Chandler v. Cheesecake Factory Rests., Inc.*, 189 N.C.App. 403, 659 S.E.2d 98, 2008 WL 711628 (App. Ct.2008) (finding that the plaintiffs could not escape the preemption clause of N.C. Gen.Stat. Ann. § 95–25.14(a) by asserting their tip-pooling claim under the payday

statute, because tip-pooling was regulated by the minimum wage provision, N.C. Gen. Stat. Ann. § 95–25.3(f), and was therefore subject to N.C. Gen.Stat. Ann. § 95–25.14(a)).[15] Furthermore, Ecolab's argument that allowing the payday claims would prejudice Ecolab because they would require "new discovery," Def. Letter 3, is unpersuasive.[16] Discovery on the payday issue would likely concern when North Carolina RMs were paid, what they were paid, and the hours they worked—topics that the Parties will likely address on the FLSA overtime claims. Thus, the Court recommends allowing the motion to amend as to the proposed North Carolina state law claims.

## D. The Relation Back Of The State Law Claims To The Original Complaint

■■■ Courts may deny a motion to amend where the proposed claims would be time-barred and therefore futile. *See Twersky v. Yeshiva Univ.*, 579 Fed.Appx. 7, 12 (2d Cir.2014) (summary order) ("[T]he district court correctly concluded that amendment would have been futile"

---

**15.** In the cases relied on by the Named Plaintiffs, *see* Pls. Mem. 14, the courts allowed payday claims "based on the defendant's failure to pay wages 'to the plaintiffs for time spent when employees were changing in and out of their work uniforms, among other things,'" which is not at issue in the present case. *Hanson–Kelly v. Weight Watchers Int'l, Inc.*, No. 10 Civ. 65(WWD), 2011 WL 2689352, at *4 (M.D.N.C. July 11, 2011) ("Plaintiffs here are not seeking overtime pay or asserting that they received less than the federal minimum wage ... rather, they are seeking unpaid wages for time they actually worked."); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 468 (E.D.N.C.2010); *Martinez–Hernandez*, 578 F.Supp.2d at 820; *see also Barton v. Pantry, Inc.*, No. 04 Civ. 748(NCT), 2006 WL 1367421, at *2 (M.D.N.C. May 17, 2006) (the plaintiff's payday claims concerned hours worked "off the clock" or deleted from pay records, which was "distinct from their FLSA claims"). In addition, the

Named Plaintiffs incorrectly relied on *Hanson–Kelly* for the proposition that "[t]he FLSA does not 'provide[ ] a mechanism for the recovery of wages other than unpaid minimum wages,'" Pls. Mem. 14, when that case states that the "[d]efendants first note that Section 95–25.6 provides a mechanism for the recovery of wages other than unpaid minimum wages, which are specifically addressed under Section 9525.3," a somewhat different statement. *Hanson–Kelly*, 2011 WL 2689352, at *2.

**16.** The Court considered Ecolab's argument as to new discovery even though Ecolab raised it in supplementary briefing that the Court requested on a different issue. *See* Def. Letter 3. Concerning Ecolab's supplementary briefing, *see* Def. Letter, it was not a constructive use of Ecolab's or the Court's time for Ecolab to cut-and-paste sections of its opposition brief into its supplemental letter.

where the proposed amendments involved untimely claims.); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir.2007) (affirming dismissal of claims and denial of cross-motion to amend as to claims that were time-barred). In general, "[t]he date of the filing of the motion to amend is the date the action was commenced for statute of limitations purposes since the defendant is on notice of the new claims as of the filing of the motion." *Lekic v. 222 E. 8th St. LLC*, No. 11 Civ. 1242(ARR)(MDG), 2012 WL 4447625, at *4 (E.D.N.Y. Sept. 25, 2012). In this case, Ecolab admits it received notice of the amended pleading on April 15, 2014, and Ecolab contends that the date of notice is the "appropriate" date for calculating relation back; therefore, the Court recommends using that date rather than May 5, 2014, the date the Named Plaintiffs initiated the motion to amend. *See* Def. Mem. 2; Tr. 68:8–11 (Ecolab's counsel stated that "[t]he only appropriate time for the relation back would be to the time that they gave us notice of their amended complaint.").

Otherwise untimely claims may be permitted under the relation back doctrine. Per Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(A)-(C). Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). As long as the requirements of Rule 15(c) are met, considerations such as the general timeliness of the proposed amendment are not relevant. *Id.*

In this case, Ecolab objects to each of the proposed state law claims as futile and prejudicial to the extent those claims rely on using the September 11, 2012 filing date of the original Complaint—rather than the April 15, 2014 date on which Ecolab received notice of the Named Plaintiffs' intent to amend the Complaint—to define the temporal scope of each class. Def. Mem. 6–7.[17] Ecolab does not dispute

---

**17.** The Named Plaintiffs defined the proposed Pennsylvania class as including "[a]ll persons who have worked for Ecolab in Pennsylvania between September 11, 2009 and the date of final judgment in this matter," Am. Compl. ¶ 70, which comports with the three-year statute of limitations applicable to the Pennsylvania Wage Payment and Collection Law, *see* 43 Pa.Stat.Ann. § 260.9a(g), and the Pennsylvania Minimum Wage Act, *see Caucci v. Prison*

*Health Servs., Inc.*, 153 F.Supp.2d 605, 610 (E.D.Pa.2001).

The Named Plaintiffs applied a date of September 11, 2002 to the Illinois class, consistent with the ten-year statute of limitations applicable to the Illinois Wage Payment and Collection Act, *see* 735 Ill. Comp. Stat. § 5/13–206; Am. Compl. ¶ 80, although the statute of limitations under the Illinois Mini-

that each of the Proposed Named Plaintiffs states timely individual state law claims. *See* Pls. Mem. 5. Even if the April 15, 2014 notice date were used to calculate the statute of limitations, each of the Proposed Named Plaintiffs' claims would be timely, with the exception of that portion of Mr. Riggs' Washington state law claims that predate April 15, 2011. In other words, the Parties' dispute focuses on a portion of Mr. Riggs's claims and the Proposed Named Plaintiffs' state law class claims. The Named Plaintiffs contend that these proposed claims are not time-barred (and therefore, not futile), because relation back to the date of the original Complaint is proper under Rule 15(c). Pls. Mem. 9–11.

The Parties in this case limited their legal arguments to whether the proposed amendments met the requirements of Rule 15(c)(1)(B). The Parties did not discuss Rule 15(c)(1)(A) or (C). As discussed in detail *infra*, Sections II.D.1–2, relation back in this case must be analyzed under subsection (A), because state law provides the applicable statute of limitations, as well as (C), because the amendment seeks to add new plaintiffs; the Named Plaintiffs cannot rely on Rule 15(c)(1)(B) alone. *See Levy v. U.S. Gen. Accounting Office*, 175 F.3d 254, 254 (2d Cir.1999) (when an amendment seeks to add plaintiffs, satisfying Rule 15(c)(1)(C)(ii) is "required"); *cf.*

*Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir.2013) (considering relation back of amendments to add John Doe defendants under both Rule 15(c)(1)(A) and (C)). I analyze each section separately as to the text of each provision, beginning with subsection (B) because this is the subsection briefed by the Parties and because, as will become apparent, the considerations relevant to subsection (B) are also relevant to subsections (A) and (C).

### 1. Relation Back Under Rule 15(c)(1)(B): Identity of Conduct And Fair Notice

▮ Rule 15(c)(1)(B) allows relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), *as amended* (Oct. 3, 2006). In this case, the question is the relation back of newly added claims, rather than the elaboration of prior claims. "Where the amendment would involve a new cause of action [ ], the district court may deny leave unless 'the original complaint gave the defendant fair notice of the newly alleged claims.'"

mum Wage Law is three years, 820 Ill. Comp. Stat. 105/12(a).

The Named Plaintiffs applied a date of November 18, 2009 to the Washington class, which is 2 years, 9 months and 24 days before the filing of the Complaint. Am. Compl. ¶ 91. The Named Plaintiffs do not explain this choice of date, but it is within the three-year statute of limitations applicable to the Washington Minimum Wage Act, *see Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wash.2d 824, 837, 991 P.2d 1126, 1133 (2000) ("the three-year statute of limitations of RCW 4.16.080(3) applies to WMWA claims"), *opinion corrected on denial of recon-*

*sideration*, 1 P.3d 578 (2000), and the Washington Industrial Welfare Act, *see Walsh v. Health Mgmt. Assocs., Inc.*, No. 11 Civ. 3125(TOR), 2012 WL 1424411, at *7 (E.D.Wash. Apr. 23, 2012). The reasoning in *Seattle Professional* would suggest that a three-year statute of limitations also applies to the Washington Wage Rebate Act. *Id.*

Finally, the Named Plaintiffs applied a date of September 11, 2010 to the North Carolina class, which is consistent with the two-year statute of limitations applicable to the North Carolina Wage–and–Hour Act. *See* N.C. Gen. Stat. Ann. § 95–25.22(f); Am. Compl. ¶ 91.

*O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 68 (2d Cir.2002) (quoting *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir.1998)); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir.2014) (same); *Tran v. Tran*, 67 Fed.Appx. 40, 42 (2d Cir.2003) (notice is the "central question"); *Higgins v. NYP Holdings, Inc.*, 836 F.Supp.2d 182, 192 (S.D.N.Y.2011) (" '[T]he pertinent inquiry' " is whether the defendant received fair notice." (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir.2000))). Thus, "the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test.... [C]ourts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed.2014). " 'The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.' " *United States v. The Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir.2006) (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 159 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

The Named Plaintiffs argue that Ecolab received appropriate notice of the Proposed Named Plaintiffs' claims because these claims "stem from the same conduct at issue in the original complaint," Pls. Mem. 10, and the original complaint "alleged nationwide violations of the FLSA," Pls. Reply Mem. 4. Ecolab contends that the original Complaint did not mention the proposed state law claims; that the amendments would "alter[ ] and greatly expand[ ] the scope of the case"; and that Ecolab did not receive fair notice of the proposed state law claims for purposes of relation back. Def. Mem. 7.

The Named Plaintiffs' position has some facial appeal, in that there is overlap between the facts relevant to FLSA and state overtime claims. Depending on the allegations in a plaintiff's FLSA complaint, an employer may be on notice that the plaintiff also has state wage-and-hour law claims, or that other employees may have the same wage-and-hour claims raised in the original complaint.

Thus, in the cases on which the Named Plaintiffs rely, Pls. Mem. 9–10; Pls. Reply Mem. 4, courts considered the relation back of new claims brought by the original plaintiff, *see Wilson*, 143 F.3d at 734, 738–39 (the plaintiff's failure-to-promote claim did not relate back to his race-discrimination claim), as well as the claims of newly added plaintiffs whose claims were identical to those of the original plaintiffs, *see Bensinger v. Denbury Res. Inc.*, No. 10 Civ.1917(JG), 2013 WL 3353975, at *4–5 (E.D.N.Y. July 3, 2013) (allowing the substitution of a new plaintiff who had standing to bring the claim that the original plaintiff lacked standing to bring); *Perkins*, 2009 WL 3754097, at *5–6 (allowing the newly added plaintiffs' representative FLSA claims to relate back to the original FLSA complaint).[18]

---

18. Other cases cited by the Named Plaintiffs, Pls. Mem. 9; Pls. Reply Mem. 4, were inapposite. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19–21 (2d Cir. 1997) (discussing Rule 15(c), but allowing relation back based on substituting a real party-in-interest under Rule 17(a)); *Ruggles v. Wellpoint, Inc.*, 687 F.Supp.2d 30 (N.D.N.Y.2009) (the plaintiffs did not request relation back and Rule 15(c) was not at issue); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 95 (S.D.N.Y.2001) (noting that "state and federal [wage-and-hour] claims are similar and arise from the same operative facts," in the context of a decision on exercising supplemental jurisdiction, rather than an analysis of notice under Rule 15(c)(1)(B)); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48 (S.D.N.Y.1987) (discussing the calculation of the statute of limitations following reconsideration of a decision denying

In ·contrast, this case involves the relation back of newly added plaintiffs' state law individual and class claims that the original plaintiffs did not bring and had no standing to bring. The central question is whether the original pleading provided the defendant with fair notice of the proposed claims. The Named Plaintiffs do not identify any authority suggesting that their FLSA, New York and New Jersey claims put Ecolab on notice that Ecolab might be sued, in this action, by different plaintiffs asserting individual and class claims under the wage-and-hour laws of four additional states. *See* Tr. 65:4–14.[19]

In *American Pipe*, which held that the commencement of a class claim tolls the statute of limitations for potential class members, the Supreme Court recognized the importance of providing defendants with notice of the potential scope of a class action, stating that:

> class certification, not relation back under Rule 15(c)).

The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' are satisfied when … a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation. …

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554–55, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (quoting *Burnett v. N.Y. Central R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). Thus, in *Cliff v. Payco General American Credits, Inc.*, 363

**19.** Although not cited by the Parties, this Court considered *In re American Family Mutual Insurance Co. Overtime Pay Litigation* ("American Family"), 638 F.Supp.2d 1290 (D.Colo.2009), in which the court determined the applicability of relation back for purposes of jurisdiction under the Class Action Fairness Act ("CAFA"), an issue that is not relevant to this case. The named plaintiffs' original complaint contained FLSA and Colorado wage-and-hour claims, and the court allowed amended claims under the wage-and-hour laws of Illinois, Minnesota, Ohio and Wisconsin to relate back to the filing of the original complaint. *Id.* at 1293–94. The court reasoned that "[w]hile the new class claims are pled under different states' overtime statutes, both the state law class claims and the FLSA claim seek payment of unpaid overtime. Thus, the state law class claims merely add alternative theories of relief rather than wholly distinct claims." *Id.* at 1296. As the amended claims related back, they were not subject to CAFA, and the court declined to exercise supplemental jurisdiction over those claims. *Id.* at 1296–02. This Court does not find the decision in *American Family* to be persuasive in this case. Not only was *American Family* focused on a question of supplemental jurisdiction, but the decision turned on the similarity of the facts relevant to the FLSA and state law claims, rather than on fair notice, as is required in this Circuit. *See ASARCO*, 756 F.3d at 202.

In addition, the Named Plaintiffs rely on *Cancilla*, Pls. Mem. 11, another litigation involving Ecolab as the defendant, in which the plaintiffs were allowed to add state law wage-and-hour claims, using time periods that relied on relation back. The decision in *Cancilla* is reflected in a Minute Order rather than in a memorandum and order, *Cancilla v. Ecolab*, No. 12 Civ. 3001 (N.D.Cal. Mar. 21, 2014) (Minute Entry, ECF No. 118), so it is unclear whether that court considered the factors relevant in this Circuit, including fair notice. In addition, the plaintiffs in *Cancilla* argued that the amendments would have been made earlier but for the litigation schedule requested by Ecolab, *see Cancilla*, No. 12 Civ. 3001 (N.D.Cal. Feb. 25, 2014) (plaintiff's reply memorandum of law; ECF No. 113), a circumstance which is not at issue in this case. In any event, the *Cancilla* and *American Family* decisions are not binding on this Court.

F.3d 1113, 1131–33 (11th Cir.2004), the Eleventh Circuit held that the defendant did not have the notice required for relation back where the plaintiff originally pled state and federal debt collection class claims limited to Florida residents and later sought to expand the federal claims to a nationwide class. The Eleventh Circuit recognized "that class definitions may undergo modification, possibly several times, during the course of a class action," but rejected the expansion of the class claim where the plaintiff "made the strategic decision to limit the class to individuals residing in one state, and subsequently decided—after the statute of limitations had run—that he wished to expand his suit to encompass individuals in all fifty states." *Id.* at 1133, n. 16; *see Feuerstack v. Weiner,* No. 12 Civ. 4253(SRC)(JAD), 2013 WL 3949234, at *4 (D.N.J. July 30, 2013) (same, concerning New Jersey state and FDCPA claims); *Midland Funding LLC v. Brent,* No. 08 Civ. 1434, 2010 WL 703066, at *3–4 (N.D.Ohio Feb. 22, 2010) (same, concerning Ohio state and FDCPA claims).

The requirement of fair notice recognizes that plaintiffs wishing to rely on relation back bear some responsibility to define the scope of the action they are bringing, so that defendants may properly evaluate and respond to such claims. In this case, the proposed amendments would increase the number and identities of the potential plaintiffs, as a result of the more generous statutes of limitations of states such as Illinois in comparison to what is available under the FLSA. The proposed amendments would also involve state law classes not contemplated by the original complaint—an expansion of the class claims that is arguably more significant than that considered by the courts in *Cliff, Feuerstack* and *Midland Funding.*[20]

Under the Named Plaintiffs' theory, plaintiffs would be permitted to stop the clock on all state law wage-and-hour claims possibly brought against an employer in multiple states by filing a single FLSA collective action, as long as they were later able to identify plaintiffs in other states. Indeed, the Named Plaintiffs' reasoning suggests that Ecolab has received adequate notice that Ecolab might, at some later point, be subject to the relation back of even more state wage-and-hour-law claims—such as claims by other individuals (located in at least fourteen additional states) who filed Consent to Sue forms in this action. This is not fair notice. Although the basic facts of the alleged wage-and-hour violation purportedly committed by Ecolab is the same under federal law, the state standards vary such that a defendant facing multi-state claims must analyze its records and scope of liability under each state law separately. It would be unfair to expect a defendant to engage in this review before at least one employee from a state has stepped forward as a plaintiff to show that there is a plaintiff with standing to raise the challenge and force the defendant to consider its liability.

Furthermore, a collective action member's FLSA claim is not tolled until he or she files a Consent to Sue form. 29 U.S.C. § 256; *see D'Arpa v. Runway Towing Corp.,* No 12 Civ. 1120(JG), 2013 WL 3010810, at *5 (E.D.N.Y. June 18, 2013). The FLSA thus requires each affected employee to make him or herself known to the court in order to assert his or her claim. The Named Plaintiffs would use the FLSA—a statute which does not allow tolling based on the filing of the

---

20. This is particularly important in class actions; as previously quoted, it "is simply a feature of our multi-district court system [that] sometimes the same defendant must litigate the same issue in multiple districts." *Schneider,* 2014 WL 2871502, at *1.

original Complaint—to provide notice sufficient to allow the relation back of class members' claims under state wage-and-hour laws. Furthermore, in contrast to the tolling rules applicable to FLSA collective actions, the statute of limitations for potential state law class claims is tolled by the filing of the class claim. *See Giovaniello v. ALM Media, LLC,* 726 F.3d 106, 115 (2d Cir.2013) (citing *Am. Pipe & Const.,* 414 U.S. at 554, 94 S.Ct. 756). Under the Named Plaintiffs' reasoning, this tolling would occur even earlier, so that a state wage-and-hour class claim would be tolled by the filing of an FLSA collective action. The Named Plaintiffs have not provided any legal argument suggesting that this is a permissible application of Rule 15(c). The practical import would be to give plaintiff and counsel control of all wage-and-hour claims against an employer over an extended period of time without providing the employer with any details of the employees' employment, not their names, positions, locations or dates of employment. In addition, such a rule would not respect comity, as state-based claims would not be able to proceed in state court without possible conflict with a nascent federal litigation that lacks specificity about any state claims.

In the circumstances of this case, the Named Plaintiffs' pleading of a nationwide FLSA collective action was not fair notice of individual and class action claims under state law, notwithstanding the similarity of the relevant facts.[21] For the foregoing reasons, the Named Plaintiffs have not

demonstrated fair notice and relation back is not proper under Rule 15(c)(1)(B).

**2. Relation Back Under Rule 15(c)(1)(A): Whether The Applicable State Law Allows Relation Back**

■ Alternately, relation back is appropriate when "the law that provides the applicable statute of limitations allows relation back." Fed.R.Civ.P. 15(c)(1)(A). Under Rule 15(c)(1)(A), "if the applicable statute of limitations is determined by state law ... courts should assess both the state and federal relation back doctrines and apply whichever law is more generous." *Anderson v. City of Mount Vernon,* No. 09 Civ. 7082(ER)(PED), 2014 WL 1877092, at *2 (S.D.N.Y. Mar. 28, 2014); *see In re Vitamin C Antitrust Litig.,* 995 F.Supp.2d 125, 131–32 (E.D.N.Y.2014) (same); *Amaya v. Garden City Irrigation, Inc.,* 71 Fed.R.Serv.3d 137, 2008 WL 2940529 (E.D.N.Y.2008) (same). "The Rules Advisory Committee directs courts to look to the 'controlling *body* of limitations law'—not merely the limitations law's test for relation back." *Hogan,* 738 F.3d at 518 (quoting Fed.R.Civ.P. 15 (Advisory Comm. Notes 1991)) (finding that, per N.Y. C.P.L.R. § 1024, New York law provides a more forgiving principle for relation back in the context of naming John Doe defendants described with particularity in the complaint).

In this case, state law determines the statute of limitations to be applied to the proposed state law claims. With the above principles in mind, the Court will consider the body of limitations law for each state,

---

**21.** There may be situations in which relation back is appropriate, even though newly added plaintiffs assert claims that the original plaintiffs lacked standing to bring, because the original pleading fairly notified the defendant of the proposed claims. *See, e.g., Estate of Doe v. Islamic Republic of Iran,* 808 F.Supp.2d 1, 17 (D.D.C.2011) (in a case involving plaintiffs who were injured during the bombing of an embassy, allowing the relation back of the claims of newly added plaintiffs who were the relatives of the original plaintiffs; reasoning that defendants were on notice that the original plaintiffs had relatives who were affected by the plaintiffs'. injuries). In contrast, in this case, there is no evidence that the plaintiffs are related in any way other than that they work or have worked for the defendant employer.

and will apply state law if it is more generous than the federal standard for relation back.

### a. Relation Back Under Illinois Law

Concerning the relation back of newly added claims, Illinois law provides that,

The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition

precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended.

735 Ill. Comp. Stat. § 5/2–616(b). Illinois law contains a separate provision related to the addition of new defendants, 735 Ill. Comp. Stat. § 5/2–616(d), but Illinois courts have found that 735 Ill. Comp. Stat. § 5/2–616(b), and not (d), applies to the addition of new plaintiffs. *See Albany Park Serv., Inc. v. Kenny–Paschen Joint Venture*, 209 Ill.App.3d 432, 435, 154 Ill. Dec. 230, 568 N.E.2d 230, 232 (App.Ct. 1st Dist.1991) (applying 735 Ill. Comp. Stat. § 5/2–616(b) in the context of newly added plaintiffs; "section 2–616(d) applies only where the party seeking the amendment is attempting to join a new defendant as opposed to a new plaintiff").[22]

---

**22.** Concerning the addition of new defendants, the Illinois relation back law states,

A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the

same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended.

735 Ill. Comp. Stat. § 5/2–616(d). This provision was amended in 2002 "to bring the section into line with the Federal Rules of Civil Procedure," *Carr v. City of Chicago Police Dep't*, No. 09 Civ. 1623(CRN), 2011 WL 3793416, at *4 (N.D.Ill. Aug. 22, 2011). As discussed *infra*, Section II.D.3.a, the federal rule concerning relation back of new defendants' claims, Fed.R.Civ.P. 15(c)(1)(C), also applies to new plaintiffs' claims. Nevertheless, Illinois courts do not apply 735 Ill.

Several Illinois federal courts, including the Seventh Circuit, have described 735 Ill. Comp. Stat. § 5/2–616(b) as "functionally identical" to Rule 15(c)(1)(B). *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 751 (7th Cir.2005); *see Bemis v. Safeco Ins. Co. of Am.*, No. 09 Civ. 315(GPM), 2009 WL 1972169, at *6, *6 n. 4 (S.D.Ill. July 8, 2009) (same), *aff'd sub nom. In re Safeco Ins. Co. of Am.*, 585 F.3d 326 (7th Cir. 2009); *Schillinger v. 360Networks USA, Inc.*, No. 06 Civ. 138(GPM), 2006 WL 1388876, at *5 (S.D.Ill. May 18, 2006) (same).

The Supreme Court of Illinois has described 735 Ill. Comp. Stat. § 5/2–616(b) as "similar" to Rule 15(c)(1)(B). *Porter v. Decatur Mem'l Hosp.*, 227 Ill.2d 343, 357, 317 Ill.Dec. 703, 882 N.E.2d 583, 591 (2008); *see id.* at 227 Ill.2d at 358, 317 Ill.Dec. 703, 882 N.E.2d at 592 (noting the similarity of the texts and that there "is some interest in having a uniform body of precedent where many cases involving a diversity of citizenship could be brought in either state or federal court"). Illinois state courts have long looked to Rule 15(c) for guidance on the interpretation of 735 Ill. Comp. Stat. § 5/2–616(b), such as by requiring a showing of "adequate notice," even though 735 Ill. Comp. Stat. § 5/2–616(b) does not explicitly mention notice. *Porter*, 227 Ill.2d at 357, 317 Ill.Dec. 703,

882 N.E.2d at 591 (2008) (citing *Zeh v. Wheeler*, 111 Ill.2d 266, 280, 95 Ill.Dec. 478, 489 N.E.2d 1342, 1348 (1986)).

"[B]oth the statute of limitations and section 2–616(b) are designed to afford a defendant a fair opportunity to investigate the circumstances upon which liability is based while the facts are accessible." *Porter*, 227 Ill.2d at 355, 317 Ill.Dec. 703, 882 N.E.2d at 590; *see Metzger v. New Century Oil & Gas Supply Corp. Income & Dev. Program–1982*, 230 Ill.App.3d 679, 698–99, 171 Ill.Dec. 698, 594 N.E.2d 1218, 1232 (App.Ct. 1st Dist.1992) ("The policy of statutes of limitation is to provide a defendant with a sufficient opportunity to investigate the factors upon which his liability may be based while such evidence is still ascertainable . . . ."). Although "[c]ourts should [ ] liberally construe the requirements of section 2–616(b) to allow resolution of litigation on the merits and to avoid elevating questions of form over substance," ultimately, "these concerns do not trump considerations of whether a defendant was given adequate notice and knowledge of the incident giving rise to the lawsuit." *Porter*, 227 Ill.2d at 355, 358, 317 Ill.Dec. 703, 882 N.E.2d at 590–92 (citing *Zeh*, 111 Ill.2d at 278–79, 95 Ill.Dec. 478, 489 N.E.2d at 1348); *see Bemis*, 2009 WL 1972169, at *6; *Boatmen's Nat. Bank of Belleville v. Direct Lines, Inc.*, 167 Ill.2d 88, 102, 212 Ill.Dec. 267, 656 N.E.2d 1101, 1107 (1995).[23]

Comp. Stat. § 5/2–616(d) to the relation back of new plaintiffs' claims. *See Albany Park Service*, 209 Ill.App.3d at 435, 154 Ill.Dec. 230, 568 N.E.2d at 232.

**23.** Illinois courts support a liberal application of 735 Ill. Comp. Stat. § 5/2–616(b), but on facts distinguishable from the present action. *See, e.g., Porter*, 227 Ill.2d at 358, 317 Ill.Dec. 703, 882 N.E.2d at 592 (concerning the relation back of new medical malpractice claims to an original medical malpractice action, where all of the claims involved the same patient and hospital stay); *Bryson v. News Am. Pubs., Inc.*, 174 Ill.2d 77, 85–86, 108, 220 Ill.Dec. 195, 672 N.E.2d 1207, 1213, 1224

(1996) (involving the relation back of a plaintiff's false light and invasion of privacy claims to her original action for defamation); *see also Schorsch*, 417 F.3d at 751 (allowing expanded class claims concerning printer cartridges to relate back when the original claim concerned only printer drum kits; describing the revision as a "workaday change[ ] routine in class suits"); *Boatmen's Nat. Bank of Belleville*, 167 Ill.2d at 106–07, 212 Ill.Dec. 267, 656 N.E.2d at 1109 (allowing relation back where the amendments altered the "next of kin" plaintiffs in a wrongful death action and the defendants were on notice of the newly added plaintiff's involvement in the action prior to the expiration of the statute of limita-

Thus, Illinois case law suggests that either the Illinois relation back rule is nearly identical to the federal rule or it is quite similar. In any event, Illinois law does not suggest that 735 Ill. Comp. Stat. § 5/2–616(b) provides a more generous relation back rule than that provided by Rule 15(c)(1)(B). As the Named Plaintiffs did not meet their burden under Rule 15(c)(1)(B), *see supra* Section II.D.1, relation back would likewise not be warranted under Illinois law.

### b. Relation Back Under North Carolina Law

North Carolina's relation back rule states that,

> A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

N.C. Gen.Stat. § 1A–1, Rule 15(c). This rule is not based on federal law but "is drawn from the New York Civil Practice Law and Rules, Rule 203[f]." *Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995).[24] Thus, North Carolina courts consider New York law when interpreting N.C. Gen.Stat. § 1A–1, Rule 15(c), the language of which is substantively identical to N.Y. C.P.L.R. § 203(f). *See, e.g., Crossman*, 341 N.C. at 187, 459 S.E.2d at 717; *Baldwin v. Wilkie*, 179 N.C.App. 567, 571, 635 S.E.2d 431, 433 (Ct.App.2006) (noting that *Crossman* and the court in *Baldwin* "look[ed] to the interpretation of the New York statute ... for guidance").[25]

The North Carolina Supreme Court in *Crossman* stated that, "[n]owhere in the rule is there a mention of parties. It speaks of claims and allows the relation back of claims if the original claim gives notice of the transactions or occurrences to be proved pursuant to the amended pleading." *Crossman*, 341 N.C. at 187, 459 S.E.2d at 717. North Carolina courts subsequently "construed the *Crossman* decision to 'mean that Rule 15(c) is not authority for the relation back of claims against a new party, but *may* allow for the relation back of an amendment to correct a mere misnomer.'" *Liss v. Seamark Foods*, 147 N.C.App. 281, 283, 555 S.E.2d 365, 367 (Ct.App.2001) (quoting *Piland v. Hertford County Bd. of Comm'rs*, 141 N.C.App. 293, 299, 539 S.E.2d 669, 673 (Ct.App.2000)); *see generally In re Vitamin C Antitrust Litig.*, 995 F.Supp.2d at 132 (listing North Carolina as among states that "have expressly rejected the concept of relation-back in 'additional party' cases as opposed to 'wrong party' cases").[26]

---

tions); *Albany Park Serv.*, 209 Ill.App.3d at 437, 154 Ill.Dec. 230, 568 N.E.2d at 233 (allowing the relation back of a newly added plaintiff's claims where that plaintiff, a partnership, was the real party in interest).

**24.** *Crossman* refers to N.Y. C.P.L.R. § 203(e), but that subsection concerns a plaintiff's death or voluntary discontinuance of the action. *Crossman* is clearly referring to N.Y. C.P.L.R. § 203(f), which concerns the relation back of claims in amended pleadings. Prior to a 1992 amendment, in which an extra subsection was added, the text of subsection (f) was identified as (e). *See* 1992 Sess. Law News of N.Y. Ch. 216 (S.7524–A, A.10450–A) (McKinney's).

**25.** The only difference between the two statutes is *de minimis:* the North Carolina statute refers to when "the claim ... was interposed" and the New York statute refers to when "the claims ... were interposed." *Compare* N.C. Gen.Stat. § 1A–1, Rule 15(c), *with* N.Y. C.P.L.R. § 203(f).

**26.** The decision in *Crossman* demonstrates that although North Carolina courts may consider New York law when interpreting N.C. Gen.Stat. § 1A–1, Rule 15(c), North Carolina's relation back rule is not interpreted identically to N.Y. C.P.L.R. § 203(f). New York courts, both before and after *Crossman*, have interpreted N.Y. C.P.L.R. § 203(f) as permitting the addition of defendants beyond

More recently, in a case involving a question of relation back to determine venue, the North Carolina Court of Appeals cited *Key International Manufacturing, Inc. v. Morse/Diesel, Inc.*, 536 N.Y.S.2d 792, 798, 142 A.D.2d 448, 458 (2d Dep't 1988), for the finding that relation back of a new plaintiff's claims is proper where "[1] where the substance of the claims of the newly joined plaintiff and those of existing plaintiff are virtually identical, [2] where the ad damnum clause is thus the same in the proposed amended complaint as in the original complaint, and [3] where the newly joined plaintiff is closely related to the original plaintiff." *Baldwin*, 179 N.C.App. at 571, 635 S.E.2d at 433–34. The New York Appellate Division Second Department in *Key International Manufacturing* further stated that its decision did "not suggest that an entirely separate plaintiff may be joined in a pending action, in order to assert an otherwise time-barred claim pursuant to the relation-back provisions of [N.Y.] CPLR 203[f] where to do so would increase the measure of liability to which the defendants are exposed." *Key Int'l Mfg.*, 142 A.D.2d at 459, 536 N.Y.S.2d 792 (declining to determine the issue at that time); [27] *see EverHome Mortgage Co. v. Charter Oak Fire Ins. Co.*, No. 07 Civ. 98(RRM)(RML), 2012 WL 868961, at *10–12 (E.D.N.Y. Mar. 14, 2012) (after applying the test articulated in *Key International Manufacturing*, denying relation back where claims were "identical in substance" but "would improperly increase the measure of liability").[28] Although *Baldwin* did not specifically quote this portion of *Key International Manufacturing* concerning the measure of liability, it informs the requirement that the *ad damnum* clause be the same in both pleadings, as at least prior to October 1, 2014, North Carolina law did not require a wage-and-hour complaint to have an *ad damnum* clause. N.C. Gen.Stat. § 1A–1, Rule 8(a)(2).[29]

amendments to correct a misnomer. *See, e.g., Beck v. Consol. Rail Corp.*, 394 F.Supp.2d 632, 640 (S.D.N.Y.2005) (describing the three-part test adopted in *Mondello v. New York Blood Center–Greater New York Blood Program*, 80 N.Y.2d 219, 226, 590 N.Y.S.2d 19, 604 N.E.2d 81, 85 (1992), *holding modified by Buran v. Coupal*, 87 N.Y.2d 173, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995), for relation back after the addition of defendants under N.Y. C.P.L.R. § 203(f)).

27. Although *Key International Manufacturing* refers to N.Y. C.P.L.R. § 203(e), as discussed *supra* note 24, an amendment to the statute in 1992 changed that subsection from (e) to (f).

28. Thus, New York law limits relation back where it would allow a plaintiff to recover for "an earlier and broader time period" than what was contemplated in the original complaint, because "defendants could not have expected that plaintiff would later add claims for a period of his employment beyond the statute of limitations" and claims involving different years than those encompassed by the original complaint are "based on an 'entirely distinct set' of factual allegations." *Lekic v. 222 E. 8th St. LLC*, No. 11 Civ. 1242(ARR)(MDG), 2012 WL 4447625, at *3 (E.D.N.Y. Sept. 25, 2012) (quoting *Slayton*, 460 F.3d at 228) (denying relation back of New York Labor Law claims). Additionally, concerning amendments that would create "a huge expansion of the [original] class," the plaintiff must show "that defendant would have expected such a large class based upon the Original Complaint." *Cruz v. Town Sports Int'l*, 21 Misc.3d 1137(A), 2008 WL 5073512, at *3–4 (Sup.Ct.N.Y.Cnty.2008) (allowing additional New York wage-and-hour claims by the original plaintiffs to relate back to the filing of the original complaint asserting New York overtime violations; denying relation back for claims brought on behalf of a newly expanded class because, although the expanded class were employees of the same defendant and were raising the same New York wage-and-hour claims, they were not sufficiently related because they did not have the same job positions).

29. The text of N.C. Gen.Stat. § 1A–1, Rule 8 has been amended as of October 1, 2014 to require, in certain instances, that the pleading state whether damages exceed $5,000,000.00. *See* NC LEGIS 2014–102 (2014), 2014 North Carolina Laws S.L. 2014–102 (S.B.853).

Thus, neither North Carolina nor federal relation back law is clearly more generous than the other; rather, they set different standards. The requirements for the relation back of new plaintiffs' claims under federal law are discussed in full *supra* Section II.D.3. These requirements include that the newly asserted claim arose from the same conduct, transaction or occurrence set out in the original pleading, and that, within 120 days, defendant received notice and had knowledge of a mistake in the pleadings. Fed.R.Civ.P. 15(c)(1)(C). In contrast, North Carolina law requires that the substance of the original and added claims be "virtually identical"; that the *ad damnum* clause or measure of liability be the same; and that the original and proposed plaintiffs be "closely related." *Baldwin,* 179 N.C.App. at 571, 635 S.E.2d at 433–34; *see Key Int'l Mfg.,* 142 A.D.2d at 459, 536 N.Y.S.2d 792. Comparatively, federal law emphasizes what notice the defendant received, while North Carolina law emphasizes the similarity between the claims and between the plaintiffs.

Even under the North Carolina rule, the Named Plaintiffs have not met their burden. To the extent North Carolina courts have relied on *Key International Manufacturing* and other cases interpreting New York law, the proposed amendment contemplates an impermissible expansion of the class and Defendant's liability. The Named Plaintiffs no doubt anticipate that the North Carolina class claim will involve more North Carolina employees than the FLSA action alone, as the class claim does not share the collective action's requirement that members opt-in. Moreover, the

Named Plaintiffs seek "[d]ouble [d]amages under the North Carolina Wage and Hour Act for the North Carolina Class." Am. Compl. at 41.[30] The Named Plaintiffs have also not established that the proposed amendments "arose from the same conduct, transaction or occurrence" as required by Rule 15(c)(1)(B), *see supra* Section II.D.1, and the Court likewise does not find that the proposed amendments involve "virtually identical" claims and "closely related" plaintiffs as required by North Carolina law. For the foregoing reasons, relation back is not available under North Carolina law.

### c. Relation Back Under Pennsylvania Law

Although Pennsylvania's statute concerning amendments to pleadings does not specifically mention relation back, Pennsylvania courts have interpreted that statute as allowing relation back, in limited circumstances. The Pennsylvania statute governing amendments provides that,

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033 (amended Dec. 20, 2013 and effective Jan. 23, 2014; the amendment added the words "add a person as a party," but made no other changes).[31]

---

30. The Court offers no opinion, at this time, as to whether a plaintiff can recover both double damages under the North Carolina Wage–and–Hour Act and liquidated damages under the FLSA.

31. *See Hill v. Ofalt,* 2014 PA Super 17, 85 A.3d 540, 558 (Super.Ct.2014) (quoting the

version of Pa.R.C.P. 1033 in effect from January 1, 1947 through January 22, 2014). The statute was amended to "explicitly provide[ ] that a party may amend [its] pleading to 'add a person as a party,'" but the explanatory note to Pa.R.C.P. 1033 also "implie[d] that the rule has always permitted the amendment of a pleading to add a party." *Id.* at 558

80

"In Pennsylvania ... amendments that add a new and distinct party after the statute of limitations are not permitted." *Farina v. Nokia,* No. 06 Civ. 724(JRP), 2008 WL 436921, at *4 n. 4 (E.D.Pa. Feb. 13, 2008); *see Phillips v. Lock,* 2014 PA Super 38, 86 A.3d 906, 915 (Super.Ct.2014) (same). "Similarly, an amendment introducing a new cause of action will not be permitted after the statute of limitations has run." *Kincy v. Petro,* 606 Pa. 524, 537, 2 A.3d 490, 497 (2010); *cf. CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.,* 645 F.Supp.2d 354, 371 (E.D.Pa.2009) ("[A] proposed amendment, which does not change a cause of action but merely amplifies that which has already been averred, will be permitted even though the statute of limitations has run." (quoting *Kosek v. Yetter,* 74 Pa. D. & C.4th 236, 239 (D. & C. 4th 2005))). Under Pennsylvania law, a new cause of action is alleged "if the amendment proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed." *CRS Auto Parts,* 645 F.Supp.2d at 371 (quoting *Willett v. Evergreen Homes, Inc.,* 407 Pa.Super. 141, 150, 595 A.2d 164, 169 (Super.Ct.1991)).

Thus, several courts, including the Third Circuit, have recognized that "Pennsylvania law does not afford a more forgiving relation back principle, so [that] Rule 15(c)(1)(A) is inapplicable." *Stroud v. Abington Mem'l Hosp.,* No. 06 Civ. 4840(DRS), 2008 WL 2061408, at *18 (E.D.Pa. May 13, 2008); *see Urrutia v. Harrisburg Cnty. Police Dep't,* 91 F.3d 451, 457 (3d Cir.1996) (same); *Nelson v. Cnty. of Allegheny,* 60 F.3d 1010, 1014 n. 4 (3d Cir.1995) (same); *Fields v. Blake,* 349 F.Supp.2d 910, 917 (E.D.Pa.2004) (same).

Therefore, in this case, Pennsylvania law does not provide a basis for allowing relation back under Rule 15(c)(1)(A).

### d. Relation Back Under Washington Law

Washington's relation back law closely tracks the language in the federal rule, as it states,

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Wash. R.Super. Ct. Civ. CR 15(c) (hereinafter, "CR 15(c)").

Although CR 15(c) refers to amendments "changing the party against whom a claim is asserted," *id.,* it applies equally to amendments adding plaintiffs. *See Heaphy v. State Farm Mut. Auto. Ins. Co.,* No. 05 Civ. 5404(RBL), 2005 WL 1950244, at *3 n. 5 (W.D.Wash. Aug. 15, 2005) (under both CR 15(c) and Rule 15(c), applying the same standard for the addition of plaintiffs as applies to the addition of defendants); *Perrin v. Stensland,* 158 Wash. App. 185, 194 n. 10, 240 P.3d 1189, 1193 n.

---

(quoting Pa.R.C.P. 1033 and citing Pa.R.C.P. 1033 cmt.). It is unclear what effect—if any—the amendment has on Pennsylvania relation back doctrine. As the amendment

makes no mention of relation back, this Court presumes that no change in that doctrine was intended.

10 (Ct.App.2010), *as amended* (Ct.App. Nov. 10, 2010) (CR 15(c) "is not limited to cases where a plaintiff files an amended complaint seeking to bring in a new defendant, but this is the typical circumstance that creates controversy"; Washington courts, like federal courts, "apply CR 15(c) to permit relation back when there is substitution of a new party for the original plaintiff.").

Washington's relation back rule is not more generous than the federal standard. *See Armas v. New Albertson's Inc.*, No. 13 Civ. 3036(LRS), 2013 WL 6498295, at *1 (E.D.Wash. Dec. 11, 2013) ("Washington law does not provide a more liberal standard regarding 'relation back.'"); *Heaphy*, 2005 WL 1950244, at *3 n. 5 ("the resolution of the 'relation back' issue is the same under Washington or Federal law"). In fact, Washington law is arguably more demanding, because "[i]n addition to the requirements of [CR 15(c)], an amended complaint changing or adding a [party] will not relate back if the original omission of the [party] resulted from 'inexcusable neglect.'" *Armas*, 2013 WL 6498295, at *1; *see Perrin*, 158 Wash.App. at 198–99, 240 P.3d at 1195 ("inexcusable neglect has become firmly embedded in Washington case law"). "Inexcusable neglect exists where a party is ascertainable upon reasonable investigation and no reason for the initial failure to name the party appears in the record." *Armas*, 2013 WL 6498295, at *1; *see Martin v. Dematic*, 178 Wash.App. 646, 667–68, 315 P.3d 1126, 1137–38 (Ct. App.2013) (excusable neglect was not demonstrated where the plaintiffs "provide no evidence of actions that they took to determine the correct parties before the statute of limitations expired or what information any investigation revealed"), *review granted*, 180 Wash.2d 1009, 325 P.3d 914 (2014); *Perrin*, 158 Wash.App. at 201, 240 P.3d at 1197 ("Failing to name [parties] when their identities are known or easily ascertainable is likely to be a strategic choice rather than a mistake."). Washington courts recognize that defendants have "'a strong interest in repose' once the deadline passe[s]." *Perrin*, 158 Wash.App. at 202, 240 P.3d at 1197 (quoting *Krupski*, 560 U.S. at 550, 130 S.Ct. 2485). In addition, while Rule 15(c)(1)(C) requires that the defendant receive notice of the amendment within 120 days of the filing of the complaint, under CR 15(c), notice must occur "before the limitations period expires." *Russi v. Maersk, Inc.*, No. 06 Civ. 5416(RBL), 2007 WL 562491, at *3 (W.D.Wash. Feb. 16, 2007).

In this case, the Named Plaintiffs have not made a showing of excusable neglect or that Ecolab received notice prior to the expiration of the limitations period. In any event, Washington law does not support the relation back of the proposed claims, as that state's law is either identical to or more demanding than federal law.

In summary, the Court does not recommend granting Plaintiff's motion pursuant to Rule 15(c)(1)(A), as none of the relevant state relation back rules would allow relation back on the facts of this case.

### 3. Relation Back Under Rule 15(c)(1)(C): Amendments Changing A Party

Finally, under Rule 15(c)(1)(C), relation back may be appropriate when,

the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought

against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C); *see Krupski*, 560 U.S. at 541, 130 S.Ct. 2485; 3 Moore's Fed. P. § 15.19 (3d ed. 2010) ("The test for relation back … is more strenuous in the context of changed or new parties to the action. . . .").

### a. Whether Rule 15(c)(1)(C) Applies To Amendments Adding Plaintiffs

Courts in this Circuit have come to differing conclusions as to whether Fed. R.Civ.P. 15(c)(1)(C) applies to amendments seeking to add plaintiffs. Although on its face Rule 15(c)(1)(C) applies only to amendments in "the party or the naming of the party against whom a claim is asserted," the Advisory Committee's notes to Rule 15 state that "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Fed.R.Civ.P. 15 (Advisory Committee Notes to 1966 Amendment).[32]

On several occasions, the Second Circuit has applied Rule 15(c)(1)(C) to amendments adding plaintiffs. The Second Circuit in *Levy* affirmed dismissal of an amended complaint as time-barred where the proposed additional plaintiffs were not added "because of a mistake, as required by [Rule 15(c)(1)(C) ]." *Levy*, 175 F.3d at 255; *see Advanced Magnetics*, 106 F.3d at 19 ("While Rule 15(c) is framed in terms of an amendment that would change the party 'against' whom a claim is asserted and of the new party's ability to maintain a 'defense,' it is also applicable to a proposed change of plaintiffs"; allowing the substitution of plaintiffs as the real parties in interest under Rule 17(a).).[33] More recently, in *Reliance Insurance Co. v. PolyVision Corp.*, the Second Circuit cited the Advisory Committee's notes on the 1966 Amendment when affirming the dismissal of a plaintiff's claims as time barred. *Reliance Ins. Co. v. PolyVision Corp.*, 292 Fed.Appx. 106, 108 (2d Cir.2008) (quoting the Advisory Committee for the proposition that, "[t]he attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments chang-

---

**32.** In a recent decision concerning an amendment to substitute a defendant, the Supreme Court found the Advisory's Committee's notes and "clear[ ]" intentions on Rule 15(c)(1)(C)'s mistake requirement to be instructive in interpreting that Rule. *Krupski*, 560 U.S. at 550–51, 130 S.Ct. 2485. A portion of the same Advisory Committee text states that Rule 15(c)(1)(C) "extends by analogy to amendments changing plaintiffs." Fed.R.Civ.P. 15 (Advisory Committee Notes to 1966 Amendment); *but see Krupski*, 560 U.S. at 557, 130 S.Ct. 2485 (Scalia, J., concurring in part and concurring in the judgment) ("The Advisory Committee's insights into the proper interpretation of a Rule's text are useful to the same extent as any scholarly commentary"; however, "it is the text of the Rule that controls.").

**33.** *Levy*, 175 F.3d at 255, cites to Rule 15(c)(3)(B), the version of the Rule then in effect. *Advanced Magnetics*, 106 F.3d at 19, also relied on this prior version of the Rule.

The wording of this prior version does not substantively vary from the current wording of Rule 15(c)(1)(C). The prior version stated that relation back was permitted when,

[T]he amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

3 Moore's Federal Practice § 15App.07 (Text of 1993 Amendment to Rule 15). "[P]rovision (2)" refers to what is now Rule 15(c)(1)(B). *Id.*

ing plaintiffs."). That case involved a plaintiff attempting to relate untimely claims to an earlier, separately filed action.

In addition, several district courts in this Circuit have applied Rule 15(c)(1)(C) in the context of newly added plaintiffs by requiring the demonstration of a mistake pursuant to subsection (ii). *See In re Morgan Stanley Mortgage Pass–Through Certificates Litig.,* 23 F.Supp.3d 203, 208–09 (S.D.N.Y.2014) (quoting *Levy); Dumont v. Litton Loan Servicing, LP,* No. 12 Civ. 2677(ER)(LMS), 2014 WL 815244, at *16 (S.D.N.Y. Mar. 3, 2014) (citing and following *Levy,* but recognizing the disagreement among district courts on this issue); *Lee v. Marvel Enters., Inc.,* 765 F.Supp.2d 440, 455 (S.D.N.Y.2011) (after noting the disagreement among the district courts, discussing factors relevant to Rule 15(c)(1)(C)), *aff'd,* 471 Fed.Appx. 14 (2d Cir.2012); *Javier H. v. Garcia–Botello,* 239 F.R.D. 342, 350 (W.D.N.Y.2006) (where the amendment sought to add new plaintiffs, " '[s]ince the new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met' " (quoting *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995), *modified,* 74 F.3d 1366 (2d Cir.1996))); *Espinosa v. The Delgado Travel Agency, Inc.,* No. 05 Civ. 6917(SAS), 2006 WL 2792689, at *84 (S.D.N.Y. Sept. 27, 2006) (applying the mistake requirement where proposed amendments would add new plaintiffs); *Andujar v. Rogowski,* 113 F.R.D. 151, 155 (S.D.N.Y.1986) (Rule 15(c)(1)(C) "clearly applies to amendments substituting or changing the plaintiff as well"); *see also Asher v. Unarco Material Handling, Inc.,* 596 F.3d 313, 319 (6th Cir.2010) (holding that Rule 15(c) does not permit relation back where an amendment adds new plaintiffs whose claims are untimely and who are neither being substituted for the original plaintiffs nor were omitted from the original complaint due to a mistake concerning identity).

Notwithstanding *Levy* and *Advanced Magnetics,* some district courts in this Circuit have not applied Rule 15(c)(1)(C) to the relation back of newly added plaintiffs' claims, and therefore have not required the demonstration of a mistake in such cases. One court described the Second Circuit's decision in *Levy,* a "one paragraph per curiam opinion," as involving "unique concerns pertaining to piggybacking employment discrimination claims," *In re S. African Apartheid Litig.,* 617 F.Supp.2d 228, 290 (S.D.N.Y.2009), and several courts in this Circuit have instead followed the reasoning of District Judge Jack B. Weinstein in finding that Rule 15(c)(1)(C)'s requirement of a mistake, " 'by its express language, appears not to be relevant when adding a plaintiff.' " *Id.* (quoting *In re Simon II Litig.,* 211 F.R.D. 86, 145 (E.D.N.Y.2002) (Weinstein, J.), *order confirmed* (Oct. 15, 2002), *vacated & remanded on other grounds,* 407 F.3d 125 (2d Cir.2005)); *see Beach v. Citigroup Alternative Invs. LLC,* No. 12 Civ. 7717(PKC), 2014 WL 904650, at *19 (S.D.N.Y. Mar. 7, 2014) ("In this Circuit, courts have rejected the 'mistake' requirement when adding new named plaintiffs in a class action and focus on whether the new plaintiff's claims were reasonably foreseeable and whether their addition would prejudice the defendants."); *Bensinger v. Denbury Res. Inc.,* No. 10 Civ. 1917(JG), 2013 WL 3353975, at *45 (E.D.N.Y. July 3, 2013) (citing *In re Simon II Litig.;* holding that " 'mistake' need not be shown in this context, as Rule 15(c) extends to plaintiffs as long as defendants had reasonable notice of the existence of the proper party"); *Perkins,* 2009 WL 3754097, at *4 (collecting cases in which courts in this Circuit "have rejected the mistake requirement [in Rule 15(c)(1)(C)(ii) ] when amendments seek to

add new plaintiffs"); *In re Gilat Satellite Networks, Ltd.,* No. 02 Civ. 1510(CPS), 2005 WL 2277476, at *25 (E.D.N.Y. Sept. 19, 2005) (quoting *In re Simon II Litig.;* reasoning that requiring the plaintiff to demonstrate a mistake is inconsistent with the liberal pleading standards of Rule 15).

In line with Second Circuit precedent and the Advisory Committee's notes on Rule 15, this Court will apply Rule 15(c)(1)(C) to the Named Plaintiffs' proposed amendments, but even were the Court to decline to apply Rule 14(c)(1)(C) in the present circumstances, the result would be the same due to the Named Plaintiffs' failure to meet the requirements of subsections Fed.R.Civ.P. 15(c)(1)(A) or Fed.R.Civ.P. 15(c)(1)(B).

### b. The Requirements of Rule 15(c)(1)(C)

As to Rule 15(c)(1)(C)'s first requirement that "Rule 15(c)(1)(B) is satisfied," the Named Plaintiffs have not met their burden under Rule 15(c)(1)(B), for the reasons discussed above. Fed.R.Civ.P. 15(c)(1)(C); *see supra,* Section II.D.1. This alone warrants denying relation back under Rule 15(c)(1)(C). Even assuming arguendo that the Named Plaintiffs satisfied Rule 15(c)(1)(B), they would not be able to demonstrate that both the notice requirement of Rule 15(c)(1)(C)(i) and the mistake requirement of Rule 15(c)(1)(C)(ii) were met "within the period provided by Rule 4(m)," which ended on January 9, 2013, or 120 days after the filing of the Complaint. Fed.R.Civ.P. 15(c)(1)(C)(i)-(ii).

### i. Rule 15(c)(1)(C)(ii): The Mistake Requirement

The Court will first address the mistake requirement of Rule 15(c)(1)(C)(ii), then the notice requirement of Rule 15(c)(1)(C)(i). As the Supreme Court stated in the context of amending to add a defendant,

A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Krupski,* 560 U.S. at 550, 130 S.Ct. 2485; *see Nelson v. Cnty. of Allegheny,* 60 F.3d 1010, 1015 (3d Cir.1995) (the relation back rule "does not save the claims of complainants who have sat on their rights" or who "seek to take advantage of the rule to perform an end-run around the statute of limitations that bars their claims"). In *Krupski,* the Supreme Court made clear ˋthat in the context of an amendment to add a defendant, the relevant inquiry is not whether the plaintiff made a mistake, but whether the defendant "knew or should have known that it would have been named as a defendant but for an error." *Krupski,* 560 U.S. at 548, 130 S.Ct. 2485. In addition, a plaintiff's lack of knowledge of a party's identity is not sufficient to establish a mistake. *See Barrow,* 66 F.3d at 470; *cf. Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir.2013) ("This Circuit has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities.").

Applying the same reasoning to the current motion seeking to add plaintiffs, the record before the Court does not contain any suggestion that Ecolab was aware of a mistake concerning the proper plaintiffs' identities. Instead, it appears the Named Plaintiffs themselves were not aware of the Proposed Named Plaintiffs at the time of the original Complaint. Although the Named Plaintiffs were aware that Ecolab was a nationwide company, they appear to have made a strategic decision to file their

action based on the claims of the Named Plaintiffs only. This is not cognizable as a mistake within the meaning of the Rule. The Named Plaintiffs could have taken steps to promptly identify the Proposed Named Plaintiffs, such as structuring discovery to provide access to employees' names or proceeding with collective action notice. In any event, Plaintiffs have not met their burden under Rule 15(c)(1)(C)(ii) and that failure, by itself, would also preclude relation back under Rule 15(c)(1).

### ii. Rule 15(c)(1)(C)(i): The 120–Day Notice Requirement

■ Rule 15(c)(1)(C)(i) requires that the defendant "received such notice of the action that it will not be prejudiced in defending on the merits." Fed.R.Civ.P. 15(c)(1)(C)(i). Thus, Rule 15(c)(1)(C)(i) requires that notice be both timely and sufficient to address any prejudice that might have resulted by the delay in naming the additional party. See S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc., No. 10 Civ. 7547(KMW)(RLE), 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 26, 2013), reconsideration denied, No. 10 Civ. 7547(KMW)(RLE), 2013 WL 5677045 (S.D.N.Y. Oct. 18, 2013). Both Rules 15(c)(1)(B) and (C)(i) require that the defendant receive proper notice; (C)(i) also requires that such notice occur within the time period proscribed by Rule 4(m), which is "120 days after the complaint is filed." Fed.R.Civ.P. 4(m). In this case, 120 days after the filing of the September 11, 2012 Complaint is January 9, 2013. Additionally, courts in this Circuit have "generally held that Rule 15(c) [ (1)(C)(i) ] is satisfied where the original party and added party have a close identity of interests." Id. (citing and quoting In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 815 F.Supp. 620, 645 (S.D.N.Y. 1993)); see 6A Fed. Prac. & Proc. Civ. § 1501 (3d ed.) (concerning amendments to add plaintiffs, "[r]elation back thus will be permitted unless the court finds that de-

fendant did not have adequate notice or that the new and the existing plaintiffs did not share a sufficient identity of interest.").

Here, the Court need not determine the extent to which the notice provisions of Rule 15(c)(1)(B) and Rule 15(c)(1)(C)(i) differ in any respect other than subsection (C)(i)'s 120–day deadline, as the Court has already determined that the Named Plaintiffs did not satisfy subsection (B)—the satisfaction of which is itself a requirement of subsection (C). Nevertheless, at least one court has suggested that Rule 15(c)(1)(C)(i) sets a higher standard for notice in circumstances such as the ones presented here. The court in Andujar reasoned that where the proposed amendment involves additional plaintiffs without "a strict identity of interests," such as "a new plaintiff who makes a distinct or aggregate claim [ ], Rule 15(c) demands some kind of notice of the new party and its claim beyond notice, afforded by institution of the original suit, of the transaction or occurrence out of which the claim arises." Andujar, 113 F.R.D. at 156 (allowing the relation back of new plaintiffs' claims that were identical to the original claims). Otherwise, the notice requirement under Rule 15(c)(1)(C)(i) would be duplicitous of Rule 15(c)(1)(B). Furthermore, the court in Andujar considered that:

> Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed. That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, more importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run. Even if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, de-

fendants would still be deprived of their interest in repose. At some point, defendants should have notice of who their adversaries are.

*Id.* at 156 (quoting *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C.Cir.1982)); *see Asher*, 596 F.3d at 319 (the plaintiffs could not "circumvent the statute of limitations, adding new parties and new claims," notwithstanding that the claims concerned the same events); *Young v. Lepone*, 305 F.3d 1, 15–16 (1st Cir.2002) ("flatly reject[ing] the proposition that relation back is available merely because a new plaintiff's claims arise from the same transaction or occurrence as the original plaintiff's claims" and "repudiat[ing] the conceit that an action filed by one plaintiff gives a defendant notice of the impending joinder of any or all similarly situated plaintiffs," as "[s]uch a rule would undermine applicable statutes of limitations and make a mockery of the promise of repose"); *Sturm v. CB Transp., Inc.*, 943 F.Supp.2d 1102, 1123 (D.Idaho 2013) (in an FLSA action that did not involve a collective action, denying relation back of the newly added plaintiffs' FLSA claims where the original plaintiffs "could have been more diligent in seeking out additional individuals" to join the action from the outset; "[i]ndividuals should not be permitted to wait on the sidelines and sit on their hands, and later benefit from doing so"); *Kahn v. Chase Manhatan Bank, N.A.*, No. 90 Civ. 2824(LMM), 1995 WL 491067, at *3 (S.D.N.Y. Aug. 17, 1995) ("The spirit and the letter of statutes of limitations require the [c]ourt to recognize a defendant's interest in foreclosing claims by additional plaintiffs arising out of identical but separate acts.").

In this case, the Named Plaintiffs failed to satisfy Rule 15(c)(1)(B), *see supra* Section II.D.1, let alone any heightened notice requirement that would differentiate Rule 15(c)(1)(C)(i) from subsection (B); in addition, the Named Plaintiffs have not shown

that such notice was provided within 120 days. In other words, the Named Plaintiffs have not demonstrated that, as of January 9, 2013, Ecolab "received such notice of the action that it will not be prejudiced in defending on the merits." Fed.R.Civ.P. 15(c)(1)(C)(i). Indeed, the Proposed Named Plaintiffs filed their Consent to Sue forms several months to over a year after this deadline. *See* Consent to Sue Forms, ECF Nos. 46–2, 83–1, 91–1, 95–2. Any identity of interests is further undermined by the fact that none of the Named Plaintiffs could have brought the proposed state law claims. *See Palmer v. Stassinos*, 236 F.R.D. 460, 466 (N.D.Cal. 2006) (there was no identity of interests for purposes of relation back where the newly added plaintiffs brought a state law claim that the original plaintiffs had no standing to bring). Thus, the concern raised in *Andujar*, 113 F.R.D. at 156, as to strangers in a multi-victim incident benefiting from the efforts of more diligent plaintiffs is present in this case. Rather than begin this litigation with all of the intended named plaintiffs, the Named Plaintiffs seek to piggyback the tardy claims of the Potential Named Plaintiffs onto their timely claims, even where the statute of limitations has lapsed. Additionally, Ecolab would be prejudiced because it would be called on to defend claims dating as far back as 2002, when the FLSA claims in the original Complaint dated back only as far as 2009. Therefore, the Named Plaintiffs have not demonstrated notice and lack of prejudice within the meaning of subsection (C)(i).

In summary, the Named Plaintiffs have not established that relation back is appropriate under either part of Rule 15(c)(1)(C), when both parts are required.

## III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Named

Plaintiffs' motion to amend be granted in part and denied in part, in that the Named Plaintiffs be permitted to amend the Complaint to add the Proposed Named Plaintiffs and their claims, but only to the extent that such claims were timely as of April 15, 2014, the date that the Named Plaintiffs informed Ecolab of their intent to amend the Complaint. Further, it is respectfully recommended that the Named Plaintiffs be directed to file an Amended Complaint consistent with this Report and Recommendation within fourteen days of the adoption of the Report and Recommendation, if it is adopted.

## IV. OBJECTIONS

Written objections to this Report and Recommendation must be filed with the Clerk of Court in accordance with the Individual Rules of the District Judge within fourteen days of service of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b); *see Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.2008).

Filed Dec. 12, 2014.

